S92Q0600. GOOGE et al. v. FLORIDA INTERNATIONAL INDEMNITY COMPANY et al.
(422 SE2d 552)

BELL, Presiding Justice.

This case comes before us upon questions certified by the United States Court of Appeals for the Eleventh Circuit, *Florida Intl. Indem. Co. v. City of Metter, Georgia*, 952 F2d 1297 (11th Cir. 1992), pursuant to Rule 36 of the Supreme Court of Georgia. See OCGA § 15-2-9. The issues the case presents to this Court involve Georgia's third-party beneficiary doctrine and the rights of third-party beneficiaries to bring actions on contracts, specifically, actions to reform contracts of liability insurance.

The case arises from the drowning of a boy, Kenneth Harold Googe, in a pool owned by the City of Metter and operated by the Metter/Candler County Recreation Department (hereinafter "the Department") in June 1986. Googe's survivors (hereinafter "the Googes") sued the City of Metter (hereinafter "the City"), among others, alleging that a lifeguard, Myron Colley, was negligent in having left his station and was therefore the proximate cause of the drowning. The Candler Superior Court held that the City was not a proper party to the action and could not be held liable because the pool was operated solely by the Department, which was not an agent of the City. The Googes thereafter amended their complaint to name the Department as a defendant. The superior court then ruled that the Department was protected by sovereign immunity and therefore immune from suit unless it was insured, see OCGA § 36-33-1; how-

ever, the superior court withheld entering judgment in favor of the Department pending the outcome of the federal litigation, which we will now describe.

Florida International Indemnity Company (hereinafter "Florida International"), a non-resident of the State of Georgia, had issued a policy of liability insurance to the City covering the year in which the drowning occurred. Following entry of the superior court order ruling that the City was not a proper party, Florida International filed an action for declaratory judgment in federal court seeking an order that it is not liable to indemnify the Department because the City is the only named insured under the policy. Florida International moved for summary judgment on the issue and the Googes, having been allowed to intervene as parties defendant, filed their own motion for summary judgment, asserting that the parties to the insurance contract intended that the policy cover the Department. The Googes' motion in effect requested the district court to reform the contract of insurance.

Although the district court recognized that the Googes had proffered substantial evidence that Florida International, the City and the Department believed that the policy covered the Department for risks attendant to the operation of the pool, the court found as undisputed the fact that the policy, as written, did not cover the Department.[1] That fact, taken together with the orders of the superior court, which ruled that the City did not operate the pool and was therefore not a proper party and that the Department was immune from suit unless it was insured, led the district court to rule that the Googes, as persons who were neither parties to the contract of insurance nor in privity with those parties, do not have standing to invoke the equitable remedy of reformation of the contract to include the Department as a named insured.

The Googes appealed to the Eleventh Circuit, enumerating as error the district court's failure to reform the insurance contract. The Eleventh Circuit has determined that the Googes' argument presents two questions, the answers to which control the resolution of that case and has therefore certified those questions to this Court as follows:

1. "Are the Googe survivors third-party beneficiaries of the City of Metter's municipal liability insurance policy?"

2. "If so, may they seek reformation of the insurance policy as third-party beneficiaries?"[2]

---

[1] In its unpublished opinion, the district court states as follows: "It is undisputed that the policy, as written, will not provide coverage to the Department." (*Florida Intl. Indem. Co. v. City of Metter, Georgia*, No. CV688-99, S.D.Ga., Jan. 19, 1990 at 3). The issue was raised on appeal by the Googes to the Eleventh Circuit; however, that court ruled that its review of the pleadings indicated that the issue had not been raised in the district court and was therefore waived on appeal. *Florida Intl.*, supra, 952 F2d at 1298.

[2] *Florida Intl.*, supra, 952 F2d at 1304.

The issues presented by these questions are of first impression in Georgia; neither have they been squarely addressed elsewhere. For purposes of analysis, we consider the first question and having done so, find that we must respond in the negative to both.

1. The Googes now argue, both to the Eleventh Circuit and in their brief to this Court, that members of the public are the intended beneficiaries of contracts of liability insurance purchased by municipalities; that the protections afforded by the policies accrue not to the municipalities, but to the public; and that the municipalities have expressly waived their governmental immunity *in order to confer a benefit on the public*. The Googes contend that, as the intended recipients of the benefit, members of the public achieve the status of third-party beneficiaries of the policies insuring those municipalities and must therefore be accorded the right to bring actions on those contracts directly against the insurers. See OCGA § 9-2-20 (b).[3] This position, as it has been advanced and related to us by the Eleventh Circuit in its opinion certifying these questions, would expand the existing Georgia doctrine of third-party beneficiaries not only to bring the Googes within its ambit but also to accord them standing to sue for reformation of the policy. *Florida Intl.*, supra, 952 F2d at 1302, 1303.

Although the Eleventh Circuit's opinion acknowledges the general rule in Georgia that liability claimants are not regarded as third-party beneficiaries of liability policies,[4] it points out that there exists a notable exception to the general rule; i.e., where liability insurance coverage is legislatively mandated. This exception, the Eleventh Circuit states, is based on the theory that the General Assembly's mandate of liability coverage confers on the members of the public third-party beneficiary rights vis-a-vis those policies. In this regard we are cited to two cases involving both statutorily mandated insurance coverage and either express legislative authorization for third-party actions or express recognition of third-party beneficiary status.[5] We are

---

[3] OCGA § 9-2-20 reads in part as follows: "(a) As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it. . . .

"(b) The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."

[4] *Florida Intl.*, supra, 952 F2d at 1300. See, e.g., *Insured Lloyds v. Bobo*, 116 Ga. App. 89 (156 SE2d 518) (1967); *Murray v. Life Ins. Co.*, 107 Ga. App. 545 (130 SE2d 767) (1963).

[5] See *Griffin v. Johnson*, 157 Ga. App. 657 (278 SE2d 422) (1981), discussing the statutory authorization for persons injured by motor common carriers to bring suit directly against the insurers of those common carriers (OCGA § 46-7-12 (e); *Krasner v. Harper*, 90 Ga. App. 128 (82 SE2d 267) (1954)), discussing the statutory language which expressly designated children riding county school buses as insureds under liability policies required to be purchased by the counties and authorizing the insertion in those policies of clauses to protect also the general public from injury resulting from the negligent operation of county school

also cited to another case where, in the absence of any express statutory language so stating, this Court recognized the third-party beneficiary status of victims of automobile accidents.[6] We acknowledge the exception and the public policy consideration underlying that exception; however we are not persuaded that recognition of third-party beneficiary status should be judicially conferred in the absence of legislatively mandated insurance coverage.

As noted above, the position advanced by the Googes (and amplified by the Eleventh Circuit) is that the waiver of governmental immunity to the extent of the insurance coverage, by, e.g., a municipality, in and of itself created a sufficient beneficial interest in the public to allow members thereof to sue for the reformation of the municipal liability policy. The theory underlying this argument is that the benefit conferred upon members of the public is more than a merely "incidental" benefit (which would not entitle the recipient thereof to a direct action against the insurer see *Murray v. Life Ins. Co.*, 107 Ga. App. 545 (130 SE2d 767) (1963)), since it is the crucial right to sue an otherwise immune entity. The waiver and corresponding benefit argument derives from the fact that at the time Kenneth Harold Googe drowned (1986) and when both the Georgia and Federal suits were filed (1988), Art. I, Sec. II, Par. IX (a) of the 1983 Georgia Constitution (hereinafter "the 1983 version of Art. I, Sec. II, Par. IX") waived sovereign immunity on the part of the State, its agencies, and departments "as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided."[7]

While we cannot but agree that the right to sue a governmental

---

buses (OCGA §§ 20-2-1090 and 20-2-1092).

[6] *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235 (392 SE2d 3) (1990) which discussed the effect of the passage of the Motor Vehicle Accident Reparations Act (OCGA §§ 33-34-1 to 33-34-17). In that case this Court declared that

[t]he General Assembly's passage of mandatory automobile liability insurance makes clear that public policy is . . . concerned with providing adequate resources with which to compensate victims of automobile accidents, *a new class of beneficiaries to automobile liability insurance contracts.* [Emphasis supplied.] [*Cotton States* at 237.]

*Cotton States* is distinguishable from the present case in that the City was not required to obtain the insurance in question.

[7] Article I, Section II, Paragraph IX, of the 1983 Constitution was proposed during the 1982 session of the General Assembly as an amendment to the 1976 Constitution. Ga. L. 1982, p. 2546, § 1. The provision was ratified on November 2, 1982, became effective on January 1, 1983, and was adopted, without further amendment, as part of the 1983 Constitution. Ga. L. 1990, p. 2435, § 1, rewrote this Paragraph to provide that sovereign immunity may be waived by the enactment of a State Tort Claims Act. The constitutional amendment was ratified on November 6, 1990, and became effective on January 1, 1991. The State Tort Claims Act, OCGA Ch. 21, Art. 2, was enacted (Ga. L. 1992, p. 1883, § 1) and became effective July 1, 1992. We assume without deciding that the present case is governed by Art. I, Sec. II, Par. IX as it existed in 1988.

entity for its negligence was clearly the reason for the adoption of the 1983 version of Art. I, Sec. II, Par. IX, neither can we ignore the clear wording of that provision, i.e., that the right is only coextensive with the defendant entity's insurance coverage.[8] The public policy concern for compensating victims of governmental negligence is balanced, we believe, by its concern, heretofore adequately protected by the doctrines of sovereign and governmental immunity, that the public purse not be emptied by the claims of injured members of the public.[9]

The liability insurance purchased by the City was voluntarily acquired; it was not legislatively mandated. Notwithstanding the concerns of this Court with the harsh consequences of our decision, we are persuaded by the broader concerns voiced heretofore, both by this Court and by the General Assembly, and we therefore are unwilling to extend to members of the public the status of third-party beneficiaries of municipal liability insurance contracts.

2. Inasmuch as we hold that the Googes are not third-party beneficiaries of the City's contract of liability insurance, we must also conclude that OCGA § 9-2-20 (b) will not afford them the right to bring an action to reform the contract to name the Department as an insured, nor do we agree that "sound judicial policy," in the words of the Eleventh Circuit (*Florida Intl.*, supra, 952 F2d at 1302), will allow suits to be brought directly against the liability insurers of government entities, particularly where the object of the suit is the reformation of the underlying insurance contract.

*Certified Questions Answered. Clarke, C. J., Hunt, Benham, Fletcher and Sears-Collins, JJ., concur.*

DECIDED NOVEMBER 19, 1992.

*Barnard M. Portman, Paul H. Felser, Michael K. Gardner,* for appellants.

---

[8] Moreover, the 1983 version of Art. I, Sec. II, Par. IX only waived sovereign immunity *if* an entity procured insurance coverage, but did not *require* that such coverage be obtained. *Ward v. Bulloch County*, 258 Ga. 92 (365 SE2d 440) (1988).

[9] See *Toombs County v. O'Neal*, 254 Ga. 390, 393 (330 SE2d 95) (1985) (Justice Weltner's special concurrence: "When a public body has purchased liability insurance, there is no necessity for the protection which sovereign immunity provides *to the public.*" (Emphasis in the special concurrence.)); *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 301 (1) (357 SE2d 569) (1987). ("There can be no mistaking the intention to preserve the protection of the public purse through the doctrine of sovereign immunity except to the extent that insurance has been purchased.") See also OCGA § 50-21-21: "Legislative intent. (a) The General Assembly recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. . . . [However, t]he exposure of the state treasury to tort liability must . . . be limited. State government should not have the duty to do everything that might be done." Ga. L. 1992, p. 1883 at 1884.

*Karsman, Brooks & Callaway, Stanley Karsman, D. Campbell Bowman, Jr., Glen A. Cheney,* for appellees.