## A94A2805. CONKLIN v. ZANT et al.
(454 SE2d 159)

ANDREWS, Judge.

This appeal is taken by plaintiff Robert Conklin, a death row inmate at the Georgia Diagnostic & Corrections Center in Jackson, Georgia. It is the third appearance of this case before this court; the previous appearances were in *Conklin v. Zant*, 198 Ga. App. 543 (402 SE2d 319) (1991), and *Conklin v. Zant*, 202 Ga. App. 214 (413 SE2d 536) (1991). The facts relevant to the various enumerations of error will be set forth as necessary.

1. In his first three enumerations, Conklin claims that the Butts County Superior Court erred in granting partial summary judgment to defendant/appellee Lumbermens Mutual Casualty Company ("Lumbermens"), and in denying his own motion for summary judgment against Lumbermens.

Conklin's grievance in this matter arose from his tearing pages out of a law book, for which a disciplinary report against him was filed. After a hearing, he was found guilty of the offense of destruction of state property and fined $59.25, which was taken from his inmate account. The hearing officer who found him guilty of the offense was Gilchrist Garrett. Conklin appealed the disciplinary action to Warden Walter Zant, who affirmed the hearing findings.

On September 2, 1992, Conklin filed a complaint against Gilchrist Garrett, Walter Zant, Glynn Suggs, June Killingsworth, and John Does I and II. Conklin later amended his complaint to include Lumbermens, Lanson Newsome, David Evans and Bobby Whitworth as parties. In essence, Conklin alleged that the defendants converted funds from his inmate account and thus violated his due process rights. Conklin also claimed that the defendants had violated the Georgia Racketeer Influenced & Corrupt Organizations (RICO) statute. With regard to Zant, Conklin claimed that his violations of the policies and procedures of the prison had breached the terms of Zant's statutory official bond, for which both Zant and Lumbermens, the issuer of the bond, were liable.

Lumbermens answered, asserting that Conklin was not an obligee, party to, or insured under the bond, and had no rights to bring suit against it. Alternatively, Lumbermens contended that even if Conklin had rights under the bond, the alleged loss was excluded from coverage.

On December 14, 1992, Conklin filed a "Motion for Order Declaring Whether Lumbermens Mutual Casualty Company's Bond Number 3F 123 796-01 is the Official Bond of Defendants Walter Zant and Glynn Suggs." Lumbermens filed a response to this motion in which it stated that the bond was a fidelity bond and not a statutory official bond.

On January 12, 1993, Lumbermens filed its motion for partial summary judgment in which it argued that the bond in question was a fidelity bond because it was issued for the sole use and benefit of the State of Georgia and that therefore, under the clear terms of the bond, Lumbermens' only obligation was to reimburse entities of the State of Georgia for losses caused by the dishonest or unfaithful acts of state employees. Lumbermens cited specific provisions within the bond that stated that the bond was for the sole benefit of the obligee and that the surety was not liable for any loss sustained by any party other than the insured. Lumbermens contended that it had no obligation to reimburse the general public and that since Conklin was not a party to the bond, his action was barred. In connection with its motion, Lumbermens presented evidence which established that Conklin was not an insured under the bond and that the bond was a fidelity bond. See generally *Price v. Arrendale*, 119 Ga. App. 589 (168 SE2d 193) (1969).

After hearing oral arguments, the court granted Lumbermens' motion. In its order, the court determined that the bond did not cover persons not in privity with the obligee or the surety and that Conklin's suit was barred. From this order, Conklin appeals.

The bond at issue here is a "Public Employees Blanket Bond." The Declarations page lists the name of the insured as "All Subdivisions, Departments, Bureaus, and All Other Entities." In "Exclusion Section 3," the document states: "The Surety shall not be liable under this Bond for loss sustained by any party other than the Insured as a result of any act or omission of an Employee whether or not such act or omission occurred in the performance of the duties by the Employee."

In "Legal Proceedings, Section 7," the document states: "This Bond is for the sole benefit of the Obligee for the use and benefit of the Insured. No suit, action or proceeding of any kind to recover on account of loss under this Bond may be brought by anyone other than the Obligee or the Insured. . . ."

Despite these provisions, Conklin, citing *American Surety Co. v. Googe*, 45 Ga. App. 108, 110-112 (163 SE 293) (1932), argues that the bond at issue was intended to satisfy the requirements of OCGA § 42-5-32, and that, as such, its terms should be construed so as to allow him to proceed. In support of this position, he also cites OCGA § 45-4-1 et seq.; *Fidelity-Phenix Ins. Co. v. Maudlin*, 118 Ga. App. 401 (163 SE2d 834) (1968); *Googe v. Fla. Intl. Indem. Co.*, 262 Ga. 546 (422 SE2d 552) (1992); and additional sections of the policy, which he claims indicate that the bond was intended to serve as the statutory bond.

OCGA § 42-5-32 (a) provides: "Before any state or county correctional institution or other facility operating under the jurisdiction of

the board shall be approved to receive inmates, the board shall require the warden, superintendent, or other chief custodial officer of the institution to execute a bond, in an amount as the board may require, with good securities to be approved by it, such bond to be not less than $10,000.00 payable to the Governor and his successors in office and conditioned upon the following: (1) To account faithfully for all public and other funds or property coming into the principal's custody, control, care or possession; and (2) To discharge truly and faithfully all the duties imposed upon him by law or by the rules and regulations of the board." (Indention omitted.) Subsection (c) of the statute provides: "All bonds given under this Code section shall be liable for any breach of the conditions specified in paragraphs (1) and (2) of subsection (a) of this Code section by a deputy, agent, or subordinate of the principal, whether expressed therein or not; and all such bonds shall be subject to and governed by all the provisions of Chapter 4 of Title 45 which are not in conflict with this Code Section."

Without reaching the issue of whether Conklin had a right to bring suit against Lumbermens in light of the restrictive language of its bond, we find the grant of summary judgment here was proper because of the piercing of an essential element of Conklin's complaint. In the record is the affidavit of Zant in which he states that "in his appellate review of the decision of the hearing officer, the restitution order was upheld based upon his understanding" of the Standard Operating Procedures, which he understood to be consistent with departmental policy. He stated that his actions were based on long contact with the Attorney General's office and that his specific actions in this matter were also based on consultation with the Attorney General's office. In light of this evidence, Conklin's action against Lumbermens as issuer of the bond is barred. Accordingly, there was no error in the court's grant of Lumbermens' motion and the denial of Conklin's motion.

2. In his fourth enumeration, Conklin claims the trial court erred in denying his motion for partial summary judgment against Zant for his claims pursuant to the RICO Act. At the time of Zant's actions, there was no indication that the policy he followed was improper. Various affidavits in the record establish that Zant's actions complied with the prison's policy. The evidence also established that at no time was the disputed money in the possession of any of the defendants.

The predicate act for the RICO claim is alleged theft. Given the evidence here we find that summary judgment on Conklin's claims was proper. See generally OCGA § 16-14-1 et seq.

3. In his fifth enumeration, Conklin appeals the failure of the trial court to specify established facts for trial. Finally Conklin argues that pursuant to OCGA § 15-6-21 (a), the court erred in failing to

timely rule on various pending motions, specifically various motions to compel which have been pending for more than one year.

We find the fifth enumeration without merit. See OCGA § 9-11-56 (d). Conklin's final argument, that the court has failed to rule on pending motions, is not properly before this court.

Because the court deems this appeal to be frivolous, it hereby imposes a penalty of $100. See Court of Appeals Rule 26 (b).

*Judgment affirmed. Beasley, C. J., and Johnson, J., concur.*

DECIDED FEBRUARY 7, 1995 —
RECONSIDERATION DENIED FEBRUARY 22, 1995 —

Robert Conklin, *pro se.*

Michael J. Bowers, *Attorney General, William F. Amideo, Assistant Attorney General,* for appellees.