[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10988
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-03432-TWT

ANNETTE TILLER,
individually, and on behalf of all others similarly situated,
JAMES GARVIN,
individually, and on behalf of all others similarly situated,
RAYNARLDO WHITTY,
individually, and on behalf of all others similarly situated,

Plaintiffs - Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants - Appellees,

ABC COMPANIES 1-5,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 4, 2013)

Before CARNES, Chief Judge, TJOFLAT and PRYOR, Circuit Judges.

PER CURIAM:

The plaintiffs in this case all had automobile accidents in Georgia with State Farm policyholders.  They filed a diversity lawsuit against State Farm raising claims under Georgia law based on allegations that State Farm did not properly compensate them for the loss in value their vehicles suffered as a result of those accidents.  The plaintiffs sought compensatory and punitive damages and injunctive and declaratory relief based on claims of underpayment, fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing.  This is their appeal of the district court's dismissal of those claims under Federal Rule of Civil Procedure 12(b)(6).

I.

A.

All of the named plaintiffs, Annette Tiller, James Garvin, and Raynarldo Whitty, were involved in auto collisions caused by State Farm policyholders between April and July 2012.  Tiller's car sustained $6,000 worth of damages.  The repairs to Garvin's and Whitty's cars amounted to $2,400 and $3,500 respectively.  State Farm paid the costs of repairing all three vehicles.  It also issued checks to Garvin and Tiller to compensate them for the loss in value to their vehicles that

2

was separate from the costs of repair.[1]  The letters enclosed with those checks stated:

> Regarding your claim against our insured for property damage to your vehicle, State Farm has assessed whether your vehicle may have sustained a loss in value in addition to the costs to repair your vehicle.  We have made that assessment using a formula referenced in Section 10 of the March 6, 2002, order of the Superior Court of Muscogee County in Mabry v. State Farm.

The letter to Tiller also contained a breakdown of State Farm's diminished value assessment, which was calculated using the so-called "17c formula." In applying this formula to Tiller's vehicle, State Farm began with the pre-collision value of her car based on the National Automobile Dealers Association's guide (the NADA value).  State Farm then discounted that number by 90%.  Finally, State Farm applied a 30% "damage modifier" discount and an 11% "mileage modifier" discount.  The calculation resulted in a total loss-in-value figure of $48.76.  State Farm mailed Tiller a check in that amount, but because she found it inadequate, she did not cash it.  Garvin also received a check for diminished value — his was for $634.00 — but the letter to him did not contain a breakdown of State Farm's loss-in-value calculation.  Although Garvin maintains that the check only partially covered his loss, he did cash it.

---

[1] An insurer's liability for diminished value arises from the theory that "the fact of physical damage resulting from an event covered by the policy can reduce the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function . . . ."  State Farm Mut. Auto. Ins. Co. v. Mabry, 556 S.E.2d 114, 123 (Ga. 2001).

3

Whitty's experience was slightly different.  State Farm did not reimburse him for any loss in value whatsoever.  Instead, State Farm informed him that he could not recover for any loss in value because, based on the "year, make, model, mileage, and damage," State Farm did not believe that his vehicle had lost any value as a result of the wreck.  The plaintiffs' allege that State Farm, utilizing its 17c formula, applied a  mileage modifier of 0% because Whitty's vehicle had more than 100,000 miles on it.  Another difference between Whitty and the other two plaintiffs is that he is also a State Farm policyholder.  Like the other two plaintiffs, however, Whitty is suing State Farm as the liability insurer of the other party.  No first-party claims have been raised.

The 17c formula at issue here arose from earlier litigation between State Farm and another party.  In that case, which involved first-party claims, the Georgia Supreme Court determined that "the insurer's obligation to pay for the loss includes paying for any lost value."  State Farm Mut. Auto. Ins. Co. v. Mabry, 556 S.E.2d 114, 122 (Ga. 2001).  In recognizing an insurer's obligation to cover loss in value, the Georgia Supreme Court also affirmed the trial court's earlier directive to State Farm to develop an "appropriate methodology" for calculating such losses.  Id at 124.  State Farm did develop its own methodology — the 17c formula at issue here — and that methodology was approved by the superior court in Mabry v. State Farm Mut. Auto. Ins. Co., No. SU99CV4915 at ¶ 10 (Super. Ct.

4

Muscogee Cnty. Mar. 6 2002) (order and final judgment).  Despite the superior court's approval, these plaintiffs argue that the 17c formula was designed to produce artificially low damages figures, and that it therefore violates the Georgia Supreme Court's directive that insurers pay loss-in-value damages.

### B.

The plaintiffs filed a diversity suit, seeking to certify two classes.   The first class (represented by Tiller and Garvin) includes anyone who has been undercompensated for the loss in value to their vehicle as a result of an accident covered by a State Farm insurance policy issued in Georgia.  Whitty sought to represent a sub-class defined as all class members who are also holders of auto insurance policies issued by State Farm.

The plaintiffs claim that State Farm has not adequately compensated them for the diminution in value to their cars.  They also bring claims for fraud, unjust enrichment, and, as to Whitty and the putative sub-class members, for breach of the implied covenant of good faith and fair dealing.  They seek damages, injunctive and declaratory relief, and attorney's fees and expenses.

State Farm moved to dismiss all of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion.

### III.

"We review <u>de novo</u> the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." <u>Ironworkers Local Union 68 v. AstraZeneca Pharm., LP</u>, 634 F.3d 1352, 1359 (11th Cir. 2011) (quotation marks omitted). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (citation omitted). To survive a motion to dismiss, therefore, the plaintiffs must plead "a claim to relief that is plausible on its face." <u>Id.</u> at 570, 127 S.Ct. at 1974.

## A.

The plaintiffs' requests for compensatory damages and injunctive and declaratory relief all rely on the premise that State Farm's 17c formula for assessing diminished-value damages is unfair. Since the 17c formula produces artificially low damages figures, they argue, they are entitled to compensatory damages to make up for the alleged shortfall. They also seek injunctive and declaratory relief.

We will not discuss the substantive fairness of the 17c formula because we agree with the district court's conclusion that Georgia's third-party beneficiary

doctrine[2] precludes any claims that are, in effect, claims for compensatory damages. In Georgia, the general rule is that "a party not in privity of contract may not bring a direct action suit against the liability insurer of the party alleged to have caused damage absent an unsatisfied judgment against the insured, legislative mandate, or as permitted by a provision in the insurance policy in issue." Richards v. State Farm Mut. Auto. Ins. Co., 555 S.E.2d 506, 507 (Ga. Ct. App. 2001) (citing Googe v. Fla. Int'l Indem. Co., 422 S.E.2d 552, 553–54 (Ga. 1992). Georgia has also enacted a statute governing automobile insurers' liability for settlement offers made in bad faith. That statute, Ga. Code § 33–4–7, imposes several requirements on a plaintiff seeking to sue a third-party liability insurer, including the requirements that the plaintiff make a presuit demand for settlement and that the plaintiff obtain a judgment against the at-fault driver before proceeding against the insurer.

In this case, it is undisputed that the plaintiffs have not secured judgments against the State Farm policyholders who caused the accidents. Nor have the plaintiffs set forth any evidence to contradict State Farm's assertion that the policies at issue do not authorize third parties to file direct actions against State

---

[2] That doctrine goes to the question of the plaintiffs' standing under state law to assert claims based on the insurance policies at issue. "The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007).

Farm.  Thus, the plaintiffs have standing to sue under the policies only if they fit within one of the statutory exceptions to the general rule prohibiting direct actions by third-party liability insurance claimants.

None of the statutory exceptions for third-party direct actions apply here. See, e.g., Ga. Code Ann. § 46–7–12(e) (permitting direct actions against common carriers' insurers); see also Ga. Code Ann. §§ 20–2–1090, 20–2–1092 (permitting direct actions in accidents involving county school buses).  Plaintiffs argue that they fit within the "legislative mandate" exception to the rule due to Georgia legislation requiring liability insurance for all drivers; the argument is that this legislation made innocent victims like them beneficiaries under liability insurance policies, thereby conferring on them standing to sue.  In support of this argument, plaintiffs make much of the dicta in two decisions, Cotton States Mut. Ins. Co v. Starnes 392 S.E.2d 3, 5 (Ga. 1990) (describing victims of car accidents as "a new class of beneficiaries to automobile liability insurance contracts" in light of legislatively required liability insurance), and Googe, 422 S.E.2d at 554 (noting that members of the public may have third-party beneficiary status with respect to certain legislatively required liability insurance policies).

While this dicta supports the plaintiffs' position, it is too weak a reed on which to lean a decision.  We are not convinced that the cases cited by the plaintiffs — neither of which deals with direct actions in the context of automobile

8

insurance — stand for the proposition that the mandatory automobile insurance law is an exception to Georgia's third-party beneficiary doctrine. The leading treatise on Georgia automobile insurance law makes no mention of it, see Ga. Automobile Insurance Law §7:1 (2013-2014 ed.), and post-Googe opinions from the Georgia Court of Appeals have declined to recognize this novel exception. As one court of appeals decision put it, the Georgia Supreme Court's recognition of victims of automobile accidents as "third-party beneficiaries in light of compulsory automobile accident insurance" does not "create the right of direct action for damages under the policy but only allows an action for equitable reformation or declaratory relief under the policy." Richards, 555 S.E.2d at 507 (citation omitted). See also Capitol Indem. Corp v. Fraley, 597 S.E.2d 601, 603 (Ga. Ct. App. 2004) ("In the absence of a judgment against the defendants, Fraley has no rights under the Capital Indemnity policy and thus could not sue the insurer directly.").

What all of this means is that the plaintiffs may only bring a direct suit seeking declaratory relief or equitable reformation. Richards, 555 S.E.2d at 507. To the extent that plaintiffs' claims arise under the liability insurance contract and seek compensatory damages, they are precluded.

Obviously, plaintiffs' straightforward claims for full payment of the allegedly deficient loss-in-value damages are foreclosed by Georgia's standing rule. We also agree with the district court that the plaintiffs have attempted to

9

dress up what are essentially claims for compensatory damages to avoid this rule of standing. For example, the plaintiffs request declaratory relief in the form of a judgment that State Farm must "properly calculate and pay for the actual" decline in value that their vehicles have sustained. They also request an injunction requiring State Farm to "properly determine" and pay the plaintiffs for the "actual diminution of value" they are rightfully "owed under Georgia law." While the plaintiffs' request that State Farm "properly calculate" the loss-in-value damages arguably expands the scope of relief beyond mere money damages, the point, purpose, and effect of the claim is still to compensate the plaintiffs for the alleged underpayment. And that, not the name that plaintiffs give the claims and relief sought, controls our decision.

The reason the plaintiffs' requests for declaratory and injunctive relief amount to claims for compensatory damages is that they both would require a court to determine the extent, if any, of State Farm's liability for underpaying third-party benefits under its liability insurance contract with the policyholder. Under Georgia law, however, the proper way to determine such liability is for the plaintiffs to obtain a money judgment against the insureds before proceeding against the insurer.

Even if we were not convinced that these claims were direct actions for money damages masquerading as claims for equitable and declaratory relief, there

are other cogent arguments for their dismissal.  As the district court observed, the plaintiffs cannot show that a legal remedy would be inadequate, which is necessary to obtain injunctive relief.  See Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 952 (1974) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.") (quotation omitted);  see also Mitsubishi Int'l corp. v. Cardinal Textile Sales, 14 F.3d 1507, 1518 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available in the absence of an adequate remedy at law.").  There is no indication that a damages judgment against the policyholders would be inadequate here.  It is, instead, an appropriate remedy for plaintiffs whose alleged injury is that they have been underpaid.

It is also difficult to see how the plaintiffs' claims would otherwise merit declaratory relief.  The purpose of declaratory judgment is to "settle and afford relief from uncertainty and insecurity" with respect to the parties' legal relations.  Ga. Code Ann. § 9–4–1.  In the absence of continuing conduct or an imminent threat of future harm to the parties, declaratory relief is unavailable.  Cf. Malowney v. Federal Collection Deposit Group, 199 F.3d 1342, 1348 (11th Cir. 1999) ("Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is declaratory judgment.").  The plaintiffs can show neither a continuing uncertainty in their legal relations with State Farm nor an imminent threat of future harm.  They complain that State Farm has not

11

fully compensated them and that it has misled them, but all of these acts took place in the past, and could be redressed through legal remedies. Thus, declaratory relief would not be available even if Georgia's standing doctrine were not an obstacle.

B.

The plaintiffs' fraud claim is also based on the alleged inadequacy of the 17c formula. Because the 17c formula is designed to systematically underpay claimants, the argument goes, the statement in State Farm's benefits letters that its assessment methodology complies with the law constitutes fraud. The specific language that the plaintiffs single out is State Farm's representation that it calculates diminution in value by using a formula referenced in the superior court's Mabry order. The plaintiffs also argue that State Farm's letter to Whitty denying that his car had suffered any diminution in value constituted fraudulent misrepresentation.

Fraud consists of five elements: a false representation by the defendant, scienter, the intent to induce the plaintiff to act (or to not act), justifiable reliance by the plaintiff, and damages. Lehman v. Keller, 677 S.E.2d 415, 417 (Ga. Ct. App. 2009). As for the plaintiffs' first fraud claim, there does not appear to be any evidence that State Farm misrepresented anything at all. Its statement that it had calculated loss-in-value damages by "using a formula referenced in Section 10 of

the March 6, 2002 order of the Superior Court of Muscogee County" is literally true. These facts do not support a claim of fraud.

The plaintiffs' fallback position is that, "[w]hile the State Farm letters… may correctly state what the Mabry Superior Court's order stated, the Mabry Superior Court's order is not an accurate reflection of the law set out in the Mabry Supreme Court ruling." According to the plaintiffs, State Farm's fraud consists in knowing the Superior Court got it wrong in approving the 17c formula while continuing to tell potential claimants that the formula is court-approved. Indeed, the plaintiffs argue that "[o]ne can only conclude that State Farm misled the Mabry Superior Court that the 17(c) formula in fact complied with Georgia law." This theory amounts to a collateral attack on the judgment of the Superior Court, and we will not entertain it. Furthermore, in Georgia, "a misrepresentation as to the status of the law… is a statement of opinion only and cannot afford a basis for a charge of fraud," Lakeside Investments Grp v. Borg, 205 S.E.2d 479, 480 (Ga. Ct. App. 1974) (citation omitted), because all persons are "presumed to know the law," Carnes v. State, 154 S.E.2d 781, 787 (Ga. Ct. App. 1967).

Plaintiffs' second fraud theory — based on State Farm's representation to Whitty that his car had suffered no diminution in value — also fails. While we cannot say whether this statement is literally true, we agree with the district court that it is an opinion about diminished value, not, as plaintiffs contend, a "statement

13

of fact" that can be "empirically verified." State Farm specifically stated that it did "not <u>believe</u> the vehicle has lost any value as a result of this accident." (emphasis added). The operative word here is "believe" — a tip off that this was only State Farm's opinion. And "mere statements of opinion cannot constitute the basis for a claim of fraud." <u>Anderson v. Atlanta Comm. for Olympic Games, Inc.</u>, 584 S.E.2d 16, 21 (Ga. Ct. App. 2003).

Even if State Farm had been less clear, Georgia law generally does not permit fraud claims predicated on appraisals of value. <u>See</u> <u>Coote v. Branch Banking & Trust Co.</u>, 664 S.E.2d 554, 556 (Ga. Ct. App. 2008) ("[T]he appraisal was an opinion of value of the real estate upon which Coote was not entitled to rely.").

## C.

Like their claims for fraud and underpayment, the plaintiffs' argument for unjust enrichment hinges on the inadequacy of the 17c formula. They argue that because State Farm underpays plaintiffs for the loss in value to their vehicles, it would be unjustly enriched at plaintiffs' expense if allowed to retain the difference.

Unjust enrichment exists when "as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the [claimant] which the benefitted party equitably ought to return or compensate for." <u>Sampson v. Haywire Adventures, Inc.</u>, 668 S.E.2d 286, 288 (Ga. Ct. App. 2008)

14

(citation omitted).  The district court's dismissal of this claim rested largely on the fact that the plaintiffs had not conferred a benefit on the defendants in the traditional sense of that word — they did not actually give anything to State Farm. The plaintiffs now argue (and State Farm concedes) that one party saving money at the other party's expense could, in the abstract, constitute a benefit for unjust enrichment purposes.  While we agree with that proposition in the abstract, we are not free to graft our own theories onto Georgia law.  Instead, we must look to the Georgia courts' articulation of the cause of action to determine whether the plaintiff must have conferred a benefit on the defendant in order to recover for unjust enrichment.

No Georgia decision is directly on point, but we infer from some state court of appeals decisions that a transfer of some benefit from plaintiff to defendant is an element of an unjust enrichment claim.  For example, the Georgia Court of Appeals has observed that the basic concept of "unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value… and avoid payment for the value received."  Reidling v. Holcomb, 483 S.E.2d 624, 626 (Ga. Ct. App. 1997) (emphasis added).  There is also a statement about how the party receiving the benefit "knew of the value being bestowed upon him by another and failed to stop the act or to reject the benefit prior to its conferment."  Id (emphasis added).

15

Finally, the Georgia Court of Appeals has observed that "[f]or unjust enrichment to apply…the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost." Hollifield v. Monte Vista Biblical Gardens, Inc., 553 S.E.2d 662, 670 (Ga. Ct. App. 2001) (emphasis added).  All of these decisions discuss unjust enrichment in terms of one party conferring a benefit on another, which conforms to the traditional notion of unjust enrichment as a type of quasi-contractual remedy.  See, e.g., 66 Am. Jur. 2d, Restitution and Implied Contracts § 74 (2013) ("Unjust enrichment implies a contract so that one party may recover damages from another.").   The only relevant Georgia statute confirms this point of view, providing that "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."  Ga. Code Ann. § 9-2-7 (emphasis added).

In this case, the plaintiffs have not conferred any sort of benefit on State Farm or performed any services for State Farm for which they have not been paid. Instead, their alleged injury is that State Farm underpaid a legal obligation that its insureds owed them.  Assuming that is true, unjust enrichment is not the right avenue to recover the money.  Plaintiffs should instead proceed against the insureds as required by the standing rule articulated in Richards, 55 S.E.2d at 507.

16

See also Ga. Code Ann. § 33–4–7 (specifying the procedure claimants must follow to recover against insurers that attempt to settle in bad faith).

### D.

The final claim we must dispose of is Whitty and the sub-class members' allegation that State Farm has breached the implied duty of good faith and fair dealing. The district court dismissed this claim because it found that Whitty had not alleged a breach of the first-party insurance contract between him and State Farm. Such an allegation is required under Georgia law in order to state a claim for breach of the implied duty of good faith and fair dealing. See Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (granting summary judgment for a defendant where the plaintiff failed to allege that the defendant had breached any term of its contract with plaintiff).

On appeal, the plaintiffs contend that they did allege a breach of the first-party insurance agreement between Whitty and State Farm. The plaintiffs apparently base this contention on the fact that State Farm was bound, in its contract with Whitty, to pay for certain types of damage to his vehicle. The record shows, however, that Whitty sought to recover under the terms of the insurance policy State Farm had issued to another person, Marcus Cobb, not that it was bound under its contract with him. See Compl. Ex. C. Despite their adamance on

17

this point, plaintiffs did not allege a breach of the contract between Whitty and State Farm.

## IV.

For these reasons, we affirm the district court's dismissal of the plaintiffs' complaint under Rule 12(b)(6).

**AFFIRMED.**