A97A0946. ANTHONY et al. v. GRANGE MUTUAL CASUALTY COMPANY.

(487 SE2d 389)

Judge Harold R. Banke.

Alton E. Anthony and Juanita Anthony appeal summary judgment granted to Grange Mutual Casualty Company ("Grange").

The following facts are undisputed. On August 25, 1987, Joseph F. and Cynthia Underwood executed a deed to secure debt to the Central Bank of Swainsboro ("Central Bank"). In May 1991, the Underwoods executed a second deed to secure debt to North American Financial Services ("North American"). Afterwards, Grange issued an insurance policy to the Underwoods, listing Central Bank as the first mortgagee and North American as the second mortgagee. In November 1991, North American transferred and assigned the second mortgage to the Anthonys. Despite this assignment and the recordation of a deed, the Grange insurance policy was never changed to reflect the change in identity of the second mortgagee from North American to the Anthonys. Alton Anthony testified that he did not make any effort to arrange for insurance.

In October 1993, after a fire destroyed part of the Underwoods' residence, Grange contacted both Central Bank and North American. North American's president, William Nash, wrote Grange and falsely identified North American as the second mortgage holder for the Underwoods' property.[1] After Grange paid Central Bank $38,500, Central Bank assigned its security deed and note to Grange. Subsequently, Grange foreclosed against the Underwoods' property and purchased the property at a public sale.

The Anthonys did not learn about the fire until 1994. Because they were not listed as the second mortgagee and because neither Grange nor North American contacted them, they did not submit a proof of claim form to Grange for the fire within the requisite 60 day

---

[1] Grange informed North American that the amount of loss was $33,802.17 and that the proceeds might not be enough to pay the second mortgagee.

period. When the Anthonys discovered the impending foreclosure, they filed the underlying action, a complaint to satisfy a security deed against Grange and Central Bank. The Anthonys sought, inter alia, to prevent the foreclosure sale, a judicial declaration that Central Bank's assignment to Grange was void, and judicial reformation of the Underwoods' insurance policy to allow them to assert a claim for the loss.[2]

The trial court found that the Anthonys lacked standing to seek reformation of the insurance contract and concluded a mutual mistake had not occurred. Although the court offered its sympathy to the Anthonys for having been defrauded by North American and Nash, it refused to reform the contract and stated that any action would lie against Nash and North American. *Held*:

The Anthonys contend that the trial court erred in refusing to reform the insurance policy between Grange and the Underwoods. They claim they were entitled to have the contract reformed based on mutual mistake. We disagree.

Reformation of a contract is an equitable remedy for correcting an instrument to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention. *Cotton States Mut. Ins. Co. v. Woodruff*, 215 Ga. App. 511 (1) (451 SE2d 106) (1994). "The remedy is not available for the purpose of making a new and different contract for the parties, but is confined to establishment of the actual agreement." Id. at 511-512. Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties. *Layfield v. Sanford*, 247 Ga. 92, 93 (274 SE2d 450) (1981). Here, the record affirmatively demonstrates the absence of a mutual mistake by the contracting parties. It is undisputed that at the request of the Underwoods, the Kilpatrick Insurance Agency added North American to the Underwoods' homeowner's policy as a loss payee as of May 3, 1991. The Anthonys failed to offer even a scintilla of evidence that Grange and the Underwoods intended to create the insurance policy at issue for their benefit or that both intended to designate them as the second mortgagee. In fact, the record fails to show that the Underwoods were even aware that their second mortgage had been transferred from North American to the Anthonys.

Finally, the Anthonys lack standing to enforce the subject policy. In order for a third party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit. *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978). See *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370)

---

[2] By a consent order, the parties agreed to the dismissal of Central Bank as a party.

(1976) (third party beneficiaries cannot enforce contract unless it clearly appears from the contract that it was intended for their benefit). " 'The mere fact that [a party] would benefit from performance of the agreement is not alone sufficient.' (Citations omitted.)" *Miree*, 242 Ga. at 135 (3). The Anthonys' failure to show the contract was made for their benefit precludes their action against Grange to enforce the contract under OCGA § 9-2-20 (b). See *City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 6 (3) (421 SE2d 113) (1992); compare *Somers v. Avant*, 244 Ga. 460 (261 SE2d 334) (1979).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MAY 27, 1997 —
RECONSIDERATION DENIED JUNE 17, 1997 — ■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Before Judge Lukemire.

*Robert P. McFarland*, for appellants.

*Simpson, Gray & Cross, Ralph F. Simpson, Melanie Barbee-Cross*, for appellee.