A98A0679. AMERICAN SOUTHERN INSURANCE COMPANY
v. ABBENSETT et al.
(501 SE2d 53)

BLACKBURN, Judge.

American Southern Insurance Company appeals the finding of the trial court that a policy of insurance issued by it to the State of Georgia provides coverage for a certain accident involving a state-owned vehicle. For the reasons set forth below, we affirm.

On March 28, 1996, Robert Abbensett, while driving a Fulton Express bus, crossed over into the opposing lane of traffic and crashed head-on into a car being driven by Barbara Furlong. Furlong died as a result of the accident.[1] At the time of the collision, Abbensett was employed by Atlanta Transportation Systems, Inc. (ATS), a for-profit company which had entered into a contract on an indepen-

---

[1] Although there were others injured in this accident, any claims by such parties are not before this Court in this appeal.

dent contractor basis with Fulton County to provide drivers for county buses. The bus being driven by Abbensett was owned by the Georgia Department of Human Resources.[2]

At the time of the accident, the State of Georgia had an insurance policy in place with American. Prior to the accident on March 28, 1996, ASI had paid several claims made by the State regarding accidents involving ATS drivers who were operating vehicles owned by the State. However, despite its prior history of paying claims, American initially refused to provide any coverage for the accident resulting in the death of Furlong.

On June 28, 1996, American filed a declaratory judgment action in which it asked the court to determine whether the policy issued by it in favor of the State of Georgia covered either ATS or Abbensett. On November 14, 1996, Abbensett's personal insurance company, Government Employees Insurance Company (GEICO) filed a motion for summary judgment that it had no obligation to provide coverage for the accident. On February 25, 1997, American filed a motion for summary judgment that it had no obligations to provide coverage, and, in response, Parrie Lea Roth, the executrix of Furlong's estate, and Abbensett filed separate motions for summary judgment, each contending that American was obligated to provide coverage for the accident.

On July 9, 1997, the trial court ruled that, due to ambiguities contained within the policy issued by American, the policy had to be construed against American and in favor of providing coverage to ATS and Abbensett. Accordingly, the trial court denied American's motion for summary judgment and granted Roth's and Abbensett's motions for summary judgment on the issue of liability. The trial court also granted GEICO's motion for summary judgment, finding that it had no obligation to provide coverage. American timely appealed the July 9, 1997 rulings of the trial court.

On January 14, 1998, during the appeal process, Roth sent a demand letter to American "to afford [American] one last opportunity to honor its contract and provide coverage." The demand was for $500,000 to settle the claims against Abbensett and ATS. On or about February 17, 1998, American tendered a $500,000 check to Roth in settlement. This represented the limits of the policy coverage. While payment of the policy limits renders moot the appeal from the trial court's ruling on American's challenge to the existence of coverage, this Court will exercise its discretion and address the merits of the appeal.

"Summary judgment is proper when there is no genuine issue of

---

[2] This bus had been donated by the Fulton County Office of Aging & Human Services.

material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. In its first and second enumerations of error, American contends that the trial court erroneously found that ATS and Abbensett are covered as insureds under the policy issued by it.

American claims that ATS and Abbensett were not covered by the policy based on certain exclusions therein. However, American bore the burden of proof to show that the exclusions claimed by it applied in this matter. *Reliance Ins. Co. v. Walker County*, 208 Ga. App. 729, 731 (431 SE2d 700) (1993). "In examining whether [American] met its burden, three rules of contract construction are applicable. First, all ambiguities in insurance contracts must be construed against the drafter, which is [American]. *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (1) (466 SE2d 48) (1995). Genuine ambiguities arise '(w)henever the phrasing of an insurance policy is so confusing that an average person could not make out the boundaries of the coverage.' Id. Second, all exclusions from coverage sought to be invoked must be strictly construed. *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1) (299 SE2d 561) (1983). Third, insurance contracts are to be read in accordance with the reasonable expectations of the insureds, where possible. Id." *Tifton Machine Works v. Colony Ins. Co.*, 224 Ga. App. 19, 20 (480 SE2d 37) (1996).

The policy in question includes in its definition of those insured, among others: (1) "[a]ny employee of the State of Georgia while operating an automobile owned by the State, its agencies or its instrumentalities" and (2) "[a]ny other person who is not a State Employee while using a vehicle with authorization, provided his/her actual operation or (if he/she is not operating) his/her other actual use is within the scope of such authorization." As used in the policy, the term "state employee" refers to "[a]ny officer, employee, or agent of the State of Georgia including elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the State of Georgia in an official capacity, whether with or without compensation, but the term does not include an independent contractor with the State of Georgia."

While ATS and Abbensett do not appear to be encompassed by the policy provision applicable to State employees because they are independent contractors working for the State, they would appear to fall under the second definition of insured provided above. American makes several arguments against such inclusion. First, American argues that ATS, a corporation, cannot be considered to be a person

under its policy. However, the policy does not explicitly define the word person, and, indeed, while the general heading under the policy refers to "persons insured," it proceeds to list both individuals and corporate entities thereunder. Therefore, this ambiguity must be construed against American pursuant to the standard rules of construction, and ATS cannot be excluded from coverage on the grounds that it is not a person. Abbensett, on the other hand, clearly qualifies as a person who is not a State employee.

Second, American argues that neither ATS nor Abbensett were given authorization to operate the Fulton Express bus in accordance with the terms of the policy. However, the policy once again proves vague with regard to what the authorization requirement entails. It defines neither the source nor the scope of the authorization required. Once again, then, in the absence of explicit terminology in the policy, the policy must be construed against American in favor of ATS and Abbensett.[3] Even under the assumption that "with authorization" contemplates authorization from the State of Georgia, as American contends, there is evidence that such authorization, at least in an implied sense, had been given by the State.

Even if the exclusions under the policy were unambiguous in their application to Abbensett and ATS, American has waived any right to rely on such exclusions by previously paying similar, though less expensive, claims. "While waiver or estoppel may not be used to enlarge the coverage contained in a policy of insurance, nevertheless, an insurer may waive any provision in an insurance policy inserted for its benefit, and may waive any condition or limitation in the policy upon which it could otherwise rely." (Punctuation omitted.) *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865 (303 SE2d 43) (1983). Furthermore, "[p]ayment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon." (Punctuation omitted.) Id. Here, American has paid, without argument, claims regarding ATS drivers in the past, although those claims were for less money than was involved here. In addition, American has now paid the exact claim which is the source of contention in this case in settlement with Furlong's estate. As such, American cannot now argue that exclusions under its policy should prevent coverage for ATS and Abbensett.[4]

---

[3] American contends that ATS and Abbensett could not have been given authorization to use the bus in question based on the vehicle's "Statement of Understanding for Donated Vehicles," which indicated that "[d]rivers of state vehicles must be either state employees or paid employees of the operating agency." This document is not a part of the insurance policy. Moreover, this document, itself, is vague in that no definition of "operating agency" is given.

[4] American argues that, prior to paying Furlong's estate in settlement, it reserved the right to seek reimbursement from ATS and Abbensett. Pretermitting the efficacy of this argument, American still waived its right to exclude ATS and Abbensett from its coverage

2. American argues that it should not be found to have acted in bad faith by originally refusing to pay the claims in contention hereunder. However, a motion concerning the issue of bad faith is still pending in the court below and is not presently before this Court. See OCGA § 5-6-34.

3. In its third enumeration of error, American argues that the insurance policy in question must be considered void because the State of Georgia had no authority to enter into such contract. Specifically, based on its interpretation of OCGA § 45-9-40 et seq., American argues that Georgia law does not allow for-profit contractors and their employees to be covered under insurance policies held by the State. In essence, American argues that it can now challenge the propriety of the policy itself even though it has accepted premiums pursuant to the policy, it has paid claims in the past pursuant to the policy, and it has paid the claim in contention hereunder pursuant to the policy.

OCGA § 45-9-40 provides: "The Department of Administrative Services . . . shall secure a blanket or group liability insurance policy which shall provide state employees . . . protection from liability for damages arising out of the operation of any state owned vehicle . . . by any state employee during the course of his employment." In other words, this provision mandates that the State provide such a policy to protect its employees. American argues that this mandate must be strictly construed such that the State has no power to enter insurance contracts which provide for broader coverage. However, in a prior case in which the insurer attempted to argue that this statute did not allow the State to procure insurance covering vehicles leased by it, we indicated that "even though [OCGA § 45-9-40] mandates coverage only for state-owned motor vehicles, the subject policy provided coverage which included motor vehicles leased to the state as well as those owned by the state. *There is nothing in the statute which proscribes such broader coverage.*" (Emphasis supplied.) *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981). Likewise, in the matter at hand, even if the State has no mandatory obligation to provide insurance protection to independent contractors using its vehicles, there is nothing in the statute which precludes such broader coverage. As such, this enumeration is meritless.

4. In its fourth enumeration of error, American contends that the trial court erroneously found that Abbensett's personal insurer, GEICO, did not have to provide coverage for the accident. American,

---

by paying prior claims. Furthermore, as the policy was ambiguous, ATS and Abbensett were covered thereunder, and American would have no viable claim for reimbursement against them.

however, has no rights in or to the GEICO policy, and, as such, it has no standing to contest the trial court's ruling with regard to GEICO's coverage of Abbensett inasmuch as such ruling has no effect on American. "In order for a third party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit. . . . The mere fact that a party would benefit from performance of the agreement is not alone sufficient." (Citations and punctuation omitted.) *Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847-848 (487 SE2d 389) (1997). The simple fact is that American has no claim for relief with regard to GEICO's policy, and, accordingly, we do not consider this enumeration.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 2, 1998 — 

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Richard H. Hill, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, W. Wright Banks, Jr., Assistant Attorney General, Reynolds & McArthur, W. Carl Reynolds, Bradley J. Survant, Davis & Sissel, Kenneth M. Sissel, Drew, Eckl & Farnham, Joseph R. Cruser, Berlon & Timmel, James T. Perry, Lamar, Archer & Cofrin, David W. Davenport, Ware & Associates, Robert D. Ware, Robert A. De Metz, Jr., Kristine J. Moschella, Eugene R. Kiser, Christopher D. Langley, Schnader, Harrison, Segal & Lewis, James M. Hunter, Timothy H. Kratz, Laura Quinn*, for appellees.