A98A1521. SHIELD INSURANCE COMPANY v. SMILEY et al.
(508 SE2d 183)

RUFFIN, Judge.

Latrell Denise Sharpe was involved in an automobile accident while driving a car owned by her boyfriend's mother, Addie Smiley. State Farm Mutual Insurance Company, as subrogee of the other driver, sued Sharpe for negligence.[1] Shield Insurance Company (Shield), Addie Smiley's insurer, filed this declaratory judgment action, seeking a declaration that it is not obligated to provide coverage or a defense to the negligence action because Sharpe was driving the car without Smiley's permission. The trial court denied Shield's motion for summary judgment, and we granted Shield's application for interlocutory review. Because the uncontroverted evidence shows that Sharpe did not have Smiley's permission to use the car, we reverse.

---

[1] The complaint also named Sharpe's boyfriend as a defendant, but did not allege that he was negligent or assert any basis for his liability.

" 'Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.' *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997)." *American Southern Ins. Co. v. Abbensett*, 232 Ga. App. 16 (501 SE2d 53) (1998).

Shield relies on a provision in its insurance policy that states, "We do not provide Liability Coverage for any person . . . [u]sing a vehicle without the express or implied permission of the 'named insured' [i.e., Addie Smiley]." Shield contends the evidence establishes that Sharpe did not have Smiley's express or implied permission to drive the car on the date of the accident. We agree.

The record reveals that, on the date of the accident, Sharpe was living with her boyfriend, Brian Smiley (whom she later married), and their two small children. At that time, Sharpe did not have a driver's license, although she had a learner's permit allowing her to drive when another licensed driver was in the car. Sharpe testified that Brian Smiley was teaching her to drive his mother's Pontiac Firebird because it had an automatic transmission. However, Brian never let Sharpe drive the car without him, and never told Sharpe she could drive it without him.

On April 15, 1995, Brian went to work, leaving Sharpe at home with their two children. Sharpe's sister and her children were also at the house. At some point in the day, Addie Smiley dropped the Firebird off at the house because she was leaving that afternoon to go to Savannah with one of her daughters. That evening, Sharpe's two-year-old son developed a fever, and Sharpe decided to go to the store to buy him some Tylenol and Gatorade. Although the store was within walking distance, only a block or two away, Sharpe decided to drive the Firebird. As she was driving to the store, she was involved in a collision with another car.

Sharpe testified that neither Addie Smiley nor Brian Smiley gave her permission to drive the Firebird, and that she did not feel she could use the car without their permission. She knew that, because she did not have a valid driver's license, she did not have the right to drive an automobile by herself. She testified that she used the car because her child was sick and she was afraid. Before the date of the collision, Sharpe had never driven a car without another licensed individual present.

Addie Smiley testified that she did not give Sharpe permission to drive the Firebird. At some point during the day of the incident,

before Smiley left for Savannah, Sharpe told Smiley that her child was not feeling well, but did not ask for permission to use Smiley's car. Smiley testified that "if I knew the baby — if she had to go, I would have told her to go on or I would take her before I left." Smiley testified that she was not aware Sharpe did not have a driver's license.[2]

The evidence clearly establishes that Sharpe did not have permission to drive the automobile at the time of the incident, and that she knew she did not have such permission. Although Addie Smiley's after-the-fact testimony suggests that, if she had been asked, she might have either driven Sharpe herself or given Sharpe permission to use the car, this testimony does not change the fact that Sharpe drove the car without permission, and indeed in violation of the law. See, e.g., *Rogers v. Travelers Indem. Co.*, 202 Ga. App. 77, 78 (1) (413 SE2d 254) (1991) (holding that driver could not reasonably believe under the circumstances that he had owner's permission to use car, particularly since driver only had learner's permit). Compare *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 717 (4) (470 SE2d 659) (1996) (fact that driver is unlicensed does not as a matter of law result in exclusion from coverage where use is with permission of owner).

*Harding v. Ga. Gen. Ins. Co.*, 224 Ga. App. 22 (479 SE2d 410) (1996), relied on by Sharpe, does not change this result. In *Harding*, which involved different exclusionary language, the issue was whether the insured's son had a reasonable belief that he had permission to use his parents' car. Although the son testified that he had never driven the car before and did not believe he had permission to drive the car on the date in question, the victim impeached this testimony by showing that the son had previously been given permission to use the car under certain circumstances and that he believed similar circumstances existed at the time he borrowed the car. Id. at 24. Under these facts, we held there was a jury question as to whether the son actually had a reasonable belief that he had permission to use the car on the date in question. Id. at 25.

---

[2] The testimony of Sharpe and Smiley is not in the form of depositions or affidavits, but consists of sworn statements given in response to questions by Shield's attorney and taken down by a court reporter. As such, this testimony is arguably not admissible as summary judgment evidence and was subject to being stricken upon motion. See *Spell v. Bible Baptist Church*, 166 Ga. App. 22, 23 (2) (303 SE2d 156) (1983). However, defendants did not object to the statements or move to strike them below. Indeed, defendants themselves relied on such statements and submitted complete copies thereof in opposition to Shield's motion for summary judgment. Moreover, defendants do not assert on appeal that the statements are inadmissible and rely on this testimony in the statement of facts and argument sections of their appellate brief. Defendants also do not challenge the recitation of the essential facts in Shield's brief. Accordingly, defendants have waived any right to object to consideration of this evidence. See Court of Appeals Rule 27 (b) (1); *Bradbury v. Mead Corp.*, 174 Ga. App. 601-602 (2) (330 SE2d 801) (1985).

In this case, unlike *Harding*, the evidence is uncontroverted that Sharpe did not have permission to use the car, did not believe she had such permission, and knew that driving the car constituted a violation of the law. Because Sharpe clearly did not have express or implied permission to use the car, she was excluded from liability coverage under Addie Smiley's insurance policy, and the trial court erred in denying Shield's motion for summary judgment.

*Judgment reversed. Pope, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 20, 1998.

*Forbes & Bowman, Morton G. Forbes, Scot V. Pool*, for appellant. *R. Michael Patrick*, for appellees.