[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11672
_____

D.C. Docket No. 1:10-cv-00009-WLS

AUTO OWNERS INSURANCE COMPANY,

Plaintiff-Appellant,

GEORGE M. MARTIN FAMILY INVESTMENT, LTD.,

Plaintiff,

versus

SOUTHWEST NUT COMPANY, INC.,

Defendant-Cross Claimant-Appellee,

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Defendant-Cross Defendant-Appellee,

NORRIS NEAL, et al.,

Intervenor Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 7, 2014)

Before WILSON, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

Auto-Owners Insurance Company appeals the district court's grant of summary judgment in favor of Southwest Nut Company and Travelers Property Casualty Company of America. Following oral argument, we affirm the district court's summary judgment order.[*]

## I

George M. Martin Family Investment, Ltd. ("Martin") owned a storage warehouse in Georgia and insured the warehouse under a policy issued by Auto-Owners. Southwest Nut holds an insurance policy issued by Travelers that provides coverage for "newly acquired property." Southwest Nut leased a portion of Martin's warehouse to store pecans.

Soon after Southwest Nut leased a portion of the warehouse, a fire of unknown origin destroyed portions of the warehouse and Southwest Nut's stored inventory. Auto-Owners paid Martin for damages to the warehouse and demanded contribution (and sought subrogation) from Travelers.

Subsequently, Auto-Owners and Martin filed this suit against Southwest Nut and Travelers to recover damages for the loss by fire. They alleged that the

---

[*] We issued a jurisdictional question in this case, and the parties' responses to the question satisfy us that complete diversity exists.

warehouse lease required Southwest Nut to purchase fire insurance for the warehouse.  Alternatively, they asserted that the Travelers policy insured the warehouse as "newly acquired property" and that Martin (and Auto Owners as Martin's subrogee) had a direct claim against Travelers as an intended beneficiary.

After discovery, the parties filed cross-motions for summary judgment.  The district court granted summary judgment in favor of Southwest Nut and Travelers.  Auto-Owners (but not Martin) filed this appeal.

## II

We review a district court's grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the non-moving party.  *See Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1247 (11th Cir. 2013) (per curiam).  This case is based on diversity jurisdiction, and all parties agree that Georgia law controls. We apply state law as declared by the state's highest court, but when no decision of the highest court is directly on point we consider decisions of state intermediate courts to determine how the highest court would decide the case.  *See State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011).

### A

Auto-Owners contends that Southwest Nut was required to insure the entire warehouse against property damage.  The district court extensively discussed this

3

contention and concluded that the lease only required Southwest Nut to insure against loss by fire caused by its use of the warehouse. For a number of reasons, we agree with the district court.

First, Section 9.03 of the lease states that Southwest Nut will "insure and keep in effect on the Warehouse and contents, fire, extended coverage and all other endorsements to cover the full range of losses for which Tenant is responsible hereunder." D.E. 70-1 at 10. Significantly, although the warehouse is comprised of nine bays and takes up approximately 60,000 square feet, the lease defines the term "Warehouse" as "a refrigerated bulk commodity storage facility consisting of three cold storage bays and one dry storage bay with office . . . comprising approximately 24,000 square feet in floor size, and associated loading dock area." D.E. 70-1 at 4. Southwest Nut's obligation to insure the "Warehouse" therefore did not require procuring insurance for the entire warehouse. *See, e.g.*, *Oglethorpe Power Corp. v. Hartwell Energy Ltd. P'ship*, 537 S.E.2d 372, 376 (Ga. Ct. App. 2000) (applying parties' "specific" definition of term "affiliate" in agreement).

Second, Section 5.02 of the lease provides that "Tenant agrees to procure and maintain full insurance coverage for absolutely *all losses*, liabilities, damages, or claims that may occur *in connection with Tenant's use of the Warehouse* and Tenant's obligations under this lease." D.E. 70-1 at 6 (emphasis added). This language means that Southwest Nut is responsible only for fire losses occurring in

4

connection with its use of the warehouse—not for the warehouse generally.  And even if this language was not clear, any ambiguity would be resolved against Martin, the drafter of the lease.  *See* O.C.G.A. § 13-2-2.  Because Auto-Owners does not contend that the fire was caused by or connected to Southwest Nut's use of the warehouse, the district court correctly concluded that the lease did not require Southwest Nut to insure against the loss by fire in this case.

**B**

Auto-Owners, as Martin's subrogee, alternatively argues that even if the lease did not require Southwest Nut to obtain fire insurance, Martin has a direct claim against Travelers under Georgia law.  We disagree.

Under Georgia law, "an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested."  O.C.G.A. § 9-2-20.  However, "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."  *Id.*

Georgia law differentiates between intended beneficiaries and incidental beneficiaries.  *See Lee v. Am. Cent. Ins. Co.*, 530 S.E.2d 727, 730 (Ga. Ct. App. 1999) (holding that for a third party to bring a claim "it must clearly appear from the contract that it was intended for his benefit").  A plaintiff is not a third-party beneficiary if a policy only incidentally covers his property.  For example, in *Insured Lloyds v. Bobo*, 156 S.E.2d 518 (Ga. Ct. App. 1967), the plaintiff

5

consigned his car to the insured. *See id.* at 519. The insurance policy specifically covered "automobiles consigned to . . . the insured." *Id.* When the plaintiff's car was stolen from the insured's dealership, the plaintiff filed suit directly against the insurer, contending that he was a third-party beneficiary under the insurance policy. *Id.* The Georgia Court of Appeals held that the plaintiff was not an intended beneficiary because the policy was intended to protect the insured from potential liability to owners of consigned cars, not to compensate the owners of consigned cars. *See id.* at 520.

The focus of the Travelers policy is to provide insurance protection for "[buildings] newly acquired by the *insured*." D.E. 71-1 at 10 (emphasis added). Although this provision may occasionally provide coverage for property actually owned by another individual, the policy is intended to protect the insured— Southwest Nut—and not a third party. As in *Insured Lloyds*, Martin's incidental benefit is insufficient to clearly show that it was an intended beneficiary.

Auto-Owners asserts that *Gulf Insurance Co. v. Mathis*, 358 S.E.2d 850 (Ga. Ct. App. 1987), compels a different result, but we are not persuaded. In *Gulf Insurance*, the Georgia Court of Appeals concluded without analysis that the insured's brother—who was living in the insured's home—could bring a claim directly against the insurer for damage to personal property in the insured's home. *See id.* at 851. *Contra First of Ga. Ins. Co. v. Augusta Ski Club*, 165 S.E.2d 476,

6

476-77 (Ga. Ct. App. 1968) (holding that third party storing goods in insured's home was not a third-party beneficiary under a policy that provided property damage coverage for personal property owned by others).  Although the *Mathis* panel did not explain its reasoning, it noted that the brother "solicited the policy in question, negotiated the premium, paid the premium and lived on the premises the entire time that the policy was in effect."  *See Mathis*, 358 S.E.2d at 851.

While there is no Georgia Supreme Court case directly on point, the Georgia Supreme Court has said that more than an incidental benefit is required to create a third-party beneficiary.  *See Googe v. Fla. Int'l Indem. Co.*, 422 S.E.2d 552, 554 (Ga. 1992).  The Georgia Court of Appeals, considering similar factual scenarios, has also held that an incidental benefit from an insurance policy is insufficient to create a third-party beneficiary relationship.  *See, e.g.*, *Anthony v. Grange Mut. Cas. Co.*, 487 S.E.2d 389, 390-91 (Ga. Ct. App. 1997) (holding that assignee of mortgage was not an intended beneficiary even when the insurance policy listed the original mortgagee as a payee); *Augusta Ski Club*, 165 S.E.2d at 476-77; *Insured Lloyds*, 156 S.E.2d at 519.  We will not construe an unclear result in one case to conflict with the corpus of Georgia precedent, and conclude that these well-reasoned opinions from the Georgia Court of Appeals accurately predict how the Georgia Supreme Court would decide this case.

7

Accordingly, we conclude that Martin is not a third-party beneficiary of the Travelers policy, and as a result Auto-Owners cannot bring a direct action against Travelers as Martin's subrogee.

## III

The district court correctly concluded that the Southwest Nut did not breach the lease in this case because it was only required to insure against loss by fire caused by or connected to its use of the "Warehouse," as that term is defined in the lease. Additionally, because Martin is not clearly an intended beneficiary under the Travelers policy, Auto-Owners—as Martin's subrogee—does not have a direct claim against Travelers. Accordingly, the district court correctly granted summary judgment in favor of Southwest Nut and Travelers, and we affirm.

**AFFIRMED.**

8