**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 14, 2016**

# In the Court of Appeals of Georgia

A16A1372. OCCIDENTAL FIRE AND CASUALTY OF NORTH   McF-053
    CAROLINA v. GOODMAN et al.

A16A1373. GOODMAN et al. v. STOVER et al.                          McF-054

McFADDEN, Judge.

The main appeal in this case challenges a trial court's order granting summary judgment to plaintiffs on their claims for breach of contract and reformation of an insurance policy to name the correct insured and denying summary judgment to the defendants as to all claims. However, the trial court correctly ruled that the insurance policy must be reformed to correct the mutual mistake of the parties naming the wrong insured and correctly found that there exist genuine issues of material fact as to the remaining claims. Accordingly, we affirm the summary judgment rulings. The cross-appeal challenges the trial court's order dismissing certain of the plaintiffs' claims as time-barred by the statute of limitation. However, the trial court correctly

ruled that the claims were filed after the statute of limitation had expired, so we affirm.

*Case No. A16A1372*

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Norton v. Cobb*, 284 Ga. App. 303 (643 SE2d 803) (2007). This Court reviews de novo a grant or denial of summary judgment, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. Id. at 303-304.

So viewed, the evidence shows that on November 17, 2008, R & R Spirits of Atlanta, LLC entered into an agreement with Irish Bred Pub & Grill V, Inc., for the purchase of all the assets and interests of a bar and restaurant business in McDonough, Georgia known as Irish Bred Pub & Grill. On February 26, 2009, Anthony Jones, the sole member of R & R, signed an application for commercial insurance coverage for the new bar and restaurant business. The application identified the insureds as Irish Bred Pub & Grille V, Inc., and Irish Bred Pub & Grill. On that same date, Jones signed an acceptance of a written proposal for insurance coverage from Occidental Fire & Casualty of North Carolina for Irish Bred Pub & Grill V, Inc.

and Irish Bred Pub & Grill. Thereafter, Occidental issued an insurance policy, effective February 27, 2009, listing the insured as Irish Bred Pub & Grill V, Inc.

On March 8, 2009, Gregory Ryan Gilliam was fatally stabbed at the Irish Bred Pub & Grill. In April of 2009, R & R was served with a lawsuit filed by the parents and estate of Gilliam (hereinafter, "the plaintiffs"), seeking wrongful death damages. R & R requested that, pursuant to the policy, Occidental provide R & R with a defense in the wrongful death suit. But Occidental denied coverage and refused to provide a defense on the basis that R & R was not listed as, and did not come within the definition of, an insured under the policy.

After Occidental denied coverage, R & R entered into a settlement agreement with the plaintiffs, whereby R & R assigned all of its claims against Occidental to the plaintiffs. On July 26, 2012, a default judgment was entered against R & R, and on April 25, 2013, an order was entered reflecting that the judgment was entered against R & R d/b/a Irish Bred Pub & Grill.

On August 19, 2013, the plaintiffs filed their original complaint against Occidental and others. Then on April 24, 2014, plaintiffs filed their first amended complaint against Occidental and others, asserting, among other things, claims for reformation of the insurance policy and breach of contract. The plaintiffs claimed that

3

the former owner of the business, not the current owner R & R, was identified as the insured due to mutual mistake of the parties. The plaintiffs moved for summary judgment on their reformation claim and partial summary judgment on their breach of contract claim, while Occidental filed an opposing motion for summary judgment on all claims. The trial court granted the plaintiffs' motions, finding that there was an enforceable contract between R & R and Occidental. The trial court held that the amount of damages caused by the breach of contract was an issue for the jury. The trial court denied Occidental's motion for summary judgment on the plaintiffs' claims. Occidental appeals from the trial court's summary judgment order.

1. *Reformation.*

Occidental argues that the trial court erred in reforming the policy to identify the owner of the business, R & R, rather than the former owner, as the insured. We disagree.

> Reformation of a contract is an equitable remedy for correcting an instrument to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention. The remedy is not available for the purpose of making a new and different contract for the parties, but is confined to establishment of the actual agreement. Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties.

4

*Anthony v. Grange Mut. Cas. Co.*, 226 Ga. App. 846, 847 (487 SE2d 389) (1997) (citations and punctuation omitted). "The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced." *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996) (citations omitted). Furthermore, "[a]lthough the evidence as to the mistake must be clear, unequivocal and decisive, there is no rule that reformation will be denied unless the mistake be admitted by both parties." *Fox v. Washburn*, 264 Ga. 617, 618 (1) (449 SE2d 513) (1994) (citations omitted).

In this case, the initial cause of the defect was Jones' application for insurance coverage, in which he mistakenly identified the prior corporate owner of the business and Irish Bred Pub & Grill, rather than current owner R & R, as the party to be insured. Jones explained in his affidavit that he did this because he knew R & R owned the assets and interests of the business so he believed "that by listing Irish Bred Pub & Grill that [the] bar and restaurant would be completely covered under the Occidental policy." He further deposed that he thought R & R had purchased all the names associated with the business, including Irish Bred Pub and Grill V, Inc., and that he did not know R & R had to be listed on the insurance application.

5

Thereafter, Occidental, in issuing the policy for commercial general liability coverage for the bar and restaurant business, labored under the same misconception that the name of the insured should be the prior corporate owner's name. Occidental has pointed to no evidence in the record creating a genuine issue of material fact as to why either Jones or Occidental would have intended for the policy to provide such coverage to the prior owner who no longer had any interest in the business, rather than the actual current owner. As the trial court correctly found, the clear intent of the contracting parties was to provide "insurance coverage for the new business which was owned by R & R and not [by] Irish Bred Pub & Grill V, Inc." Thus, the trial court correctly concluded that the mistake was mutual in that Occidental relied on Jones' mistake in issuing the policy in the name of the former owner of the business. "As the mistake was one common to both parties, that is both parties were laboring under the same misconception[,] and as this common mistake existed at the time of the execution of the . . . contract of insurance, it was mutual rather than unilateral." *Brannen v. Gulf Life Ins. Co.*, 201 Ga. App. 241, 244 (3) (410 SE2d 763) (1991) (citations omitted). Accordingly, Occidental has not shown that the trial court erred in reforming the policy on this ground.

2. *Prejudice.*

6

Occidental contends that it was prejudiced by reformation of the policy. However, "[r]egarding the question of prejudice, the Supreme Court of Georgia [has] explained that a party cannot be hurt by reforming the instrument, so as to keep them from getting what they did not buy." *Ledford v. Smith*, 274 Ga. App. 714, 727-728 (4) (618 SE2d 627) (2005) (citation and punctuation omitted). Here, Occidental agreed to insure the operations of the bar and restaurant, accepted payment to do so, and now seeks to avoid such coverage. Under these circumstances, "we find [Occidental,] rather than being prejudiced by the negligence of [Jones in misidentifying the correct name of the insured,] stands, in fact, to obtain a windfall not bargained for absent the equitable remedy of reformation." *Brannen*, supra at 244 (4) (citations omitted). Accordingly, the trial court did not err in granting reformation.

3. *Breach of contract.*

Occidental enumerates that there was no enforceable contract between it and R & R, and thus the trial court erred in denying Occidental's motion for summary judgment and in granting the plaintiffs' motion for summary judgment on the breach of contract claim. But as explained above, the trial court correctly reformed the contract to name R & R as the insured under the policy. Therefore, this enumeration fails.

7

4. *Post-judgment interest.*

The trial court entered judgment against Occidental for post-judgment interest on the 2012 judgment entered against R & R, as provided for in the policy. Occidental claims that this ruling is contrary to the terms of the policy, which states that such interest is covered only with respect to any lawsuit against an insured which Occidental defends. Since Occidental did not defend R & R in the prior suit which was settled and resulted in the 2012 judgment, Occidental contends that it has no obligation under the policy to pay interest on that judgment. The contention is without merit.

> [Occidental] is essentially arguing that simply because its insured agreed to settle a claim for which [Occidental] refused to provide either coverage or a defense, [Occidental] is relieved of its obligation to pay under the policy. This argument, however, is at odds with both our precedent and learned treatises. . . . [A]n insurer has a . . . duty to defend its insured against all claims covered under a policy, even those that are groundless, false, or fraudulent. An insurer that refuses to indemnify or defend based upon a belief that a claim against its insured is excluded from a policy's scope of coverage does so at its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract.

*Southern Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676 (1) (605 SE2d 27) (2004) (citations and punctuation omitted).

In this case, rather than defend the action with a reservation of rights as to coverage, Occidental simply denied coverage and refused the request to provide a defense to the lawsuit based on its incorrect belief that the claim against R & R was not covered by the policy. Under these circumstances, Occidental must bear the consequences of its decision not to defend the suit and must pay for its breach of the contract. Accordingly, the trial court correctly awarded post-judgment interest as provided for in the policy. See *Empire Fire & Marine Ins. Co. v. Driskell*, 262 Ga. App. 447, 448-449 (585 SE2d 657) (2003) (insurer required to pay post-judgment interest on claim it refused to defend where it incorrectly argued that party against whom judgment was entered was not an insured under the policy).

5. *Standing.*

Contrary to Occidental's argument, the plaintiffs, as assignees of R & R, have standing to bring the reformation and breach of contract claims. See *Insurance Agency of Glynn County v. Atlanta Cas. Co.*, 255 Ga. App. 323, 324 (1) (565 SE2d 547) (2002) (reformation of written instruments may be had by the immediate parties thereto and those standing in privity with them, such as their successors). See generally *Cherokee Nat. Life Ins. Co. v. Coastal Bank of Ga.*, 239 Ga. 800, 803 (3) (238 SE2d 866) (1977).

9

6. *Breach of fiduciary duty and attorney fees.*

Occidental contends that the trial court erred in denying its motion for summary judgment on the plaintiffs' claims for breach of fiduciary duty and attorney fees. These contentions are premised entirely on Occidental's assertion that R & R was not insured under the policy. But as explained above, R & R was the correct insured under the reformed policy, and therefore these enumerations of error fail.

### Case No. A16A1373

In addition to suing Occidental, the plaintiffs also brought claims against Shannon Stover and Insurance Office of America, Inc (hereinafter "IOA"), for negligence and breach of fiduciary duty in failing to procure liability insurance for R & R. Stover and IOA moved to dismiss the claims against them on the basis that they were time-barred by the four-year statute of limitation set forth in OCGA § 9-3-31. The trial court granted the motion to dismiss. The plaintiffs filed this cross-appeal, arguing that the trial court erred in dismissing the claims against Stover and IOA. We hold that the statute of limitation began to run when Occidential denied coverage. So we affirm the trial court's order.

The plaintiffs contend that the issue in this case is controlled by the Georgia Supreme Court's decision in *Hoffman v. Ins. Co. of North America*, 241 Ga. 328 (245

10

SE2d 287) (1978), which found that the tort claim against an insurance agent for negligent procurement of coverage was not barred by the statute of limitation. In *Hoffman*, the Supreme Court stated:

> The statute of limitation begins to run on any given claim on the date the claim accrues – in other words, on the date that suit on the claim can first be brought. When the question is raised as to whether an action is barred by a statute of limitation[], the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.

Id. at 329 (citation and punctuation omitted). The court further explained:

> The test to be applied in determining when the statute of limitation[] begins to run against an action sounding in tort is in whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon the act, the cause of action accrues and the statute begins to run only when the damage is sustained; but if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be.

Id. at 330 (citations and punctuation omitted). In short, "[t]he action in tort for negligence depends upon the presence of damages and, therefore, may not be maintained until the principal suffers a loss." Id. at 329 (citation omitted).

11

The plaintiffs contend that R & R did not suffer a loss from Stover and IOA's negligence in failing to procure coverage until there was a judgment against it on July 26, 2012. But contrary to this contention, *Hoffman* did not hold that a negligent procurement claim against an insurance agent accrues only when there is a final judgment against the insured. Instead, the crux of *Hoffman* was to reject and reverse this court's ruling in *Hoffman v. Ins. Co. of North America*, 144 Ga. App. 420 (241 SE2d 303) (1977), which relied on the rule in attorney malpractice cases that the claim accrues and the statute of limitation begins to run from the date of the breach of the duty rather than from the date the resulting damage occurs. *Hoffman*, 241 Ga. at 328. The Supreme Court in *Hoffman* noted that in an even earlier declaratory judgment case involving the same parties, *Hoffman v. Ins. Co. of North America*, 130 Ga. App. 777 (204 SE2d 520) (1974), this court had held that the insured's action could not be maintained until actual damages had been sustained, and thus both of this court's rulings were in direct conflict and put the insured "in the untenable position of never being able to bring his action; it has at all times been either too early or too late." *Hoffman*, 241 Ga. at 330. While it is apparent that the Supreme Court in *Hoffman* held that the statute of limitation in such a tort case begins to run from the date damage was sustained, not from the date of the breach, the Supreme Court did

12

not expressly hold, as the plaintiffs propose, that damage is sustained only when there is a final judgment of liability against the insured. Id.

And while we are not bound by federal authority, we find persuasive the decision of a federal court which analyzed this issue, including the *Hoffman* case, and found that

> Georgia law appears to indicate that the statute of limitation[] does not begin to run until the insurer refuses to honor the beneficiary's claim. The Court is further persuaded by the rationale of other state courts that have addressed negligent procurement claims and reached the same conclusion. See *Bush v. Ford Life Ins. Co.*, 682 So.2d 46, 47 (Ala. 1996) (concluding that a negligent procurement claim against a credit-life insurance policy provider did not accrue until the insurer's refusal to honor the beneficiary's claim); *Blumberg v. USAA Cas. Ins. Co.*, 729 So.2d 460, 462 (Fla. Dist. Ct. App. 1999) (finding that the statute of limitations began to run on an insured's claim for negligent procurement when he learned that coverage had been denied)[.]

*Saye v. Unumprovident Corp.*, Civil Action File No. 1:07-CV-31-TWT, 2007 U.S. Dist. LEXIS 58901 *14-15 (II) (A) (2) (N.D. Ga. 2007). See also *Plaza Bottle Shop v. Al Torstrick Ins. Agency*, 712 SW2d 349, 350 (Ky. Ct. App. 1986) (stating that a cause of action for negligent procurement began to run when insured was informed that it had no coverage, not when judgment was rendered against it).

In this case, we find that the plaintiffs' claims against Stover and IOA for allegedly failing to procure insurance accrued, and the statute of limitation began to

13

run, on the date Occidental denied coverage to R & R, which was May 27, 2009. See generally *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 418 (a) (604 SE2d 260) (2004) (insurer's notice that there was no coverage under policy and that it would not defend lawsuit gave plaintiffs the right to institute third-party action against insurer to determine whether insurer had duty to indemnify insureds in the suit). As assignees of R & R's claims, the plaintiffs therefore had four years from that date, until May 27, 2013, to bring the negligence and breach of duty claims against Stover and IOA. But the plaintiffs did not initiate this action until August 2013. "A motion to dismiss barred claims is properly granted when a complaint shows on its face that the statute of limitation has run and there is no further showing by amendment or by affidavit that a tolling of the statute is possible." *Harpe v. Hall*, 266 Ga. App. 340 (596 SE2d 666) (2004) (citation and punctuation omitted). Accordingly, the trial court did not err in granting the motion to dismiss the claims against Stover and IOA.

*Judgment affirmed in Case Nos. A16A1372 and A16A1373. Miller, P. J., and McMillian, J., concur.*

14