**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 5, 2019**

# In the Court of Appeals of Georgia

A19A0018. SOUTHERN TRUST INSURANCE COMPANY v.
    MOUNTAIN EXPRESS OIL COMPANY.

MARKLE, Judge.

Southern Trust Insurance Co. ("Southern Trust") appeals from the trial court's order denying its motion for summary judgment and granting summary judgment to Mountain Express Oil Co. ("MEX") in this insurance coverage dispute. After a thorough review of the record, and for the reasons that follow, we affirm.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all

reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010); OCGA § 9-11-56 (c).

So viewed, the record shows that Southern Trust issued a commercial insurance policy ("the Policy") to MEX that was in effect during the relevant time period. Per the terms of the Policy, Southern Trust would

> pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have *the right and duty to defend the insured against any "suit"* seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Emphasis supplied). "Personal and advertising injury" is defined in the Policy to include libel and slander claims.

In August 2014, Empire Petroleum filed a civil action against MEX for, among other claims, breach of contract, injunctive relief, and libel or slander.[1] MEX

---

[1] In its second amended complaint dated September 2015, Empire withdrew the libel/slander claim without prejudice.

2

"immediately" engaged two law firms – Bondurant, Mixson, and Elmore ("Bondurant") and James Johnston – to represent it. On September 24, 2014, MEX called its insurance agent and verbally reported the lawsuit. On October 9, 2014, Bondurant filed MEX's answer to the Empire suit, and, the following day, MEX notified Southern Trust's insurance agent in writing of the pending lawsuit.[2]

By letter dated December 29, 2014, Southern Trust notified MEX that its investigation showed that the Policy did not cover the allegations in the complaint for the non-libel/slander claims, and it denied coverage and a defense for those claims. It further advised that it was reserving its rights under the Policy with respect to the libel/slander claims and had retained the Swift Currie firm ("Swift Currie") to handle the defense of the libel/slander claims.

Because MEX had already hired two other firms to handle the suit, and the discovery process was underway, MEX and Southern Trust agreed that MEX could

---

[2] We need not address whether notice to the insurance agent was sufficient, see *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 489 (1) (a) (649 SE2d 602) (2007), because counsel conceded at oral argument that Southern Trust was not contesting timely notice.

continue using its lawyers, and Southern Trust would reimburse the attorneys at the rates it would normally pay Swift Currie.

On January 28, 2015, MEX sent Southern Trust a letter disputing Southern Trust's conclusion that the Policy did not provide coverage for the non-libel/slander claims, stating that it believed the Policy "does provide coverage, indemnification and defense to MEX . . . for all matters as set forth in the claim." MEX further wrote, "we believe that the coverage includes the indemnification and defense to MEX . . . for the allegations of libel and slander." Although the letter gave written notice of MEX's objections, MEX acknowledged a possible compromise, to be drafted by Southern Trust, allowing the Bondurant firm to continue handling the defense with reimbursement from Southern Trust at Swift Currie's rates.

The parties attempted to memorialize this payment agreement in writing, but no agreement was ever signed. Nevertheless, between March and July 2015, Southern Trust reimbursed MEX $40,360 in legal costs for work Bondurant performed related to the libel/ slander claim. As long as the fee invoice identified the costs as pertaining to the libel/slander claim, Southern Trust made the payment. This arrangement continued over the next several months, and during this time, MEX submitted to

4

Southern Trust only the bills related to the libel/slander claim, and paid for the other claims separately.

The Empire lawsuit settled in October 2016. Later that month, MEX submitted a demand letter to Southern Trust seeking payment of the entire amount of its litigation expenses, minus the amount Southern Trust had already paid, for a total of $728,773. MEX later amended the demand for additional expenses, for a revised total of $1,197,148.82. Thereafter, MEX filed the instant suit against Southern Trust for breach of contract and bad faith under OCGA § 33-4-6, contending that Southern Trust had the duty to defend the entire suit.

MEX moved for partial summary judgment on the issue of liability for breach of contract, arguing that Southern Trust's failure to file a declaratory action to determine its duty to defend all claims barred it from contesting the full amount of attorney fees.

Southern Trust also moved for summary judgment, arguing that it had fulfilled its duty under the contract and that MEX breached the insurance contract by rejecting Southern Trust's defense.[3] According to Southern Trust, it was MEX's idea to have

---

[3] In this vein, Southern Trust contends that it accepted the duty to defend the entire action, but that MEX declined. . This is not how the December 29 letter reads. In fact, the letter explicitly states: "Therefore, by this letter, Southern Trust hereby

5

Southern Trust reimburse MEX for the fees related solely to the libel/slander claims. Southern Trust further argued that it had acted in good faith to fulfill its contractual obligations and that MEX rejected its attempts. In response, MEX asserted that it had the right to select its own counsel due to conflicts of interest Southern Trust created, and that Southern Trust's failure to file a declaratory action to determine its duty to defend precludes it from challenging its obligation to pay the full amount of fees.

The trial court granted MEX's motion for partial summary judgment and denied Southern Trust's motion for summary judgment.[4] In a well-written order, the trial court found that Southern Trust was under an obligation to defend the entire suit – not just the libel/slander claims – and that its failure to file a declaratory action waived all of its defenses to the instant suit. The trial court further found that there was no meeting of the minds to vary the terms of the Policy that would have permitted Southern Trust to cover only those fees related to the libel and slander claims. This appeal followed.

---

denies coverage and informs you that it will not be providing liability coverage, indemnity or a defense . . . for the claims of breach of contract, conversion, unjust enrichment, promissory estoppel, right to inspection and audit, permanent injunction and tortious interference with contracts and business relations claims."

[4] The issues of damages for the breach and whether Southern Trust engaged in bad faith remain pending in the trial court.

6

On appeal, Southern Trust argues that the trial court erred in granting MEX's motion and denying its motion because (1) Southern Trust fully performed its obligations under the Policy and MEX breached the contract by rejecting Southern Trust's defense; (2) it was not required to file a declaratory action under these facts; and (3) the parties agreed to modify the Policy through an alternate agreement for the payment of attorney fees. We disagree.

This case presents interesting questions regarding the duty to defend and the propriety of a declaratory action to settle disputes over the extent of the insurance company's obligations. To resolve these issues, we first consider the overall landscape of this area of the law.

Construction and interpretation of a contract are matters of law for the court. In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction. We consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other. Any ambiguities in the contract are strictly construed against the insurer and insurance contracts are to be read in accordance with the reasonable expectations

7

of the insured where possible. A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one.

(Citations and punctuation omitted.) *Geiger v. Ga. Farm Bureau Mut. Ins. Co.*, 305 Ga. App. 399, 400-401 (1) (a) (699 SE2d 571) (2010).

It is well-settled that the duty to defend and the duty to indemnify are discrete obligations. *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565 (490 SE2d 374) (1997). The duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage. *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc.*, 288 Ga. App. 355, 356 (654 SE2d 207) (2007). Any "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." *Penn–America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565 (490 SE2d 374) (1997). See also *Landmark American Ins. Co. v. Khan*, 307 Ga. App. 609, 612 (1) (705 SE2d 707) (2011); *Fireman's Fund Ins. Co.*, 288 Ga. App. at 356; *BBL–McCarthy v. Baldwin Paving Co.*, 285 Ga. App. 494, 497-498 (1) (a) (646 SE2d 682) (2007).

Here, the Policy states: "We will have the right and duty to defend the insured against any 'suit' seeking those damages." "Suit" is defined in the Policy as "*a civil*

8

*proceeding* in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (Emphasis supplied). By using the term "suit," instead of "claim," in the Policy, Southern Trust obligated itself to defend the entire suit if any of the individual claims could be covered under the Policy. See *Utica Mut. Ins. Co. v. Kelly & Cohen, Inc.*, 233 Ga. App. 555, 556 (504 SE2d 510) (1998); see also *HDI-Gerling America Ins. Co. v. Morrison Homes, Inc.*, 701 F3d 662, 666 (II) (A) (11th Cir. 2012) (interpreting Georgia law and explaining that "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted.").

But Southern Trust failed to perform its obligation. Specifically, in its letter dated December 29, 2014, Southern Trust informed MEX that it was denying coverage on the non-libel/slander claims and would not indemnify or defend those claims. Southern Trust reserved its rights only with respect to the libel/slander claim and retained counsel to defend that portion of the suit. By refusing to defend the entire suit under the terms of the Policy, Southern Trust was in breach. See *Occidental Fire & Cas. of N. C. v. Goodman*, 339 Ga. App. 427, 431 (4) (793 SE2d 606) (2016) ("An insurer that refuses to indemnify or defend based upon a belief that a claim against its insured is excluded from a policy's scope of coverage does so at

9

its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract.") (citation omitted).

Moreover, in its January 28, 2015 letter, MEX objected to Southern Trust's refusal to provide coverage, indemnification, and a defense to the entire suit, as well as to the reservation of rights with regard to the libel/slander claim. At this point, Southern Trust was obligated to file a declaratory action to determine the scope of its responsibilities.

> Under Georgia law, where an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. Or, third, the insurer can defend under a reservation of rights. . . . A reservation of rights is . . . designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage.

(Citations omitted.) *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 404-405 (1) (730 SE2d 413) (2012). A reservation of rights must "fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." (Citation and punctuation

10

omitted.) *Hoover*, 291 Ga. at 405 (1). A reservation of rights may include a bilateral agreement between the insurer and the insured, or it can be a unilateral notice of the reservation by the insurer. *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 218 (1) (231 SE2d 245) (1976). Where "the insured refuse[s] to consent to the bilateral agreement an insurer may avoid the sharp horns of the dilemma presented by such refusal by giving the insured a timely unilateral notice of its reservation and non-waiver of rights. This should include notice of its intention to seek immediate declaratory relief." (Citation omitted.) *Richmond*, 140 Ga. App. at 218-219 (1).

Although a declaratory judgment is not necessary where the insured accepts the insurer's defense under the reservation of rights, *Sims v. First Acceptance Ins. Co. of Ga., Inc.*, 322 Ga. App. 361, 363 (2) (745 SE2d 306) (2013), the record here shows that there was no unequivocal acceptance of Southern Trust's defense under the reservation of rights. Thus, Southern Trust was required to file a declaratory action to preserve its defenses and protect itself from liability for breach of contract and bad faith. See *Richmond*, 140 Ga. App. at 218-219 (1).

MEX's rejection of Swift Currie's representation and the subsequent agreement to have Southern Trust pay Bondurant's fees at Swift Currie rates does not modify the contract or otherwise alter Southern Trust's obligations under the Policy. It is

11

undisputed that, although the parties submitted and paid these fees, they were unable to reduce the agreement to writing.[5] Moreover, because the Policy required Southern Trust to defend the entire suit, MEX was not required to agree to have Southern Trust do less than it was contractually obligated to do. See, e.g. *JNJ Foundation Specialists v. D. R. Horton, Inc.*, 311 Ga. App. 269, 272-273 (1) (d) (717 SE2d 219) (2011) (physical precedent only) (insurance company's alleged offer to defend only JNJ Foundations and not D. R. Horton was inconsistent with terms of policy and thus D. R. Horton was not required to accept less than it was entitled to under the contract). See also *Occidental Fire & Cas. of N. C.*, 339 Ga. App. at 430 (2) (with regard to reforming the contract to the prejudice of one party, "the Supreme Court of Georgia has explained that a party cannot be hurt by reforming the instrument, so as to keep them from getting what they did not buy.") (citation and punctuation omitted). Although the parties are free to modify the terms of a written contract through their course of conduct, *Hanham v. Access Mgmt. Group L. P.*, __ Ga.__ , *3 (3) ( __ SE2d __ ) 2019 WL 1006359 (2019), and can waive a breach in the same way, *Forsyth*

---

[5] The Policy terms could be changed or waived "only by endorsement issued by [Southern Trust] and made a part of this policy." Moreover, any such changes must be in writing. See OCGA. §§ 33-24-1 (a), 33-24-13. No such written endorsement was ever made to the Policy.

*County v. Waterscape Svcs., LLC*, 303 Ga. App. 623, 630 (2) (a) (694 SE2d 102) (2010), the record here shows that the parties did not modify the contract, and that MEX did not waive the breach. Despite MEX's submission of the libel/slander related expenses for reimbursement, MEX also notified Southern Trust that it did not accept the refusal to defend the entire suit. The proper course of action in the face of this unresolved dispute was for Southern Trust to file a declaratory action. As the trial court found, the failure to do so is fatal to its claims.[6]

We therefore conclude that the trial court properly granted partial summary judgment to MEX and denied Southern Trust's motion for summary judgment.

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur.*

---

[6] Having found that the dispute triggered Southern Trust's obligation to file for declaratory relief, we need not consider whether MEX breached the Policy or whether Southern Trust created a conflict of interest.