A06A2317. NORTON et al. v. COBB.
(643 SE2d 803)

ANDREWS, Presiding Judge.

We granted the application for interlocutory appeal of Cobb County and its employee, Arthur Trellis Norton, to determine whether the trial court correctly denied Cobb County and Norton's motion for summary judgment on the basis of the Recreational Property Act (RPA)[1] or, alternatively, on the basis of sovereign and official immunity. The trial court, although finding that official immunity shielded Norton from liability for injuries suffered by Daniel Cobb when he fell from a swing previously inspected by Norton and that sovereign immunity shielded Cobb County, nonetheless concluded that the RPA waived these immunities.[2]

Summary judgment is proper when there is no genuine issue of material fact as to any essential element of a claim and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002). A de

---

[1] OCGA § 51-3-20 et seq.

[2] As stated by the trial court, "[t]he question presented here is whether the provisions of the RPA invoke a waiver of the sovereign and official immunity that would otherwise prevent recovery in this case."

novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the evidence was that Cobb County operated parks and recreation facilities for the public, including Hurt Road Park, and there was a monthly inspection program in place. On July 16, 1999, Donna Nevils was with her godson in Hurt Road Park when Nevils noticed an "S" hook on a swing set which looked like it might come loose from the chain because the end of the hook was stretched out instead of closed on the ends. Nevils saw Norton, a Cobb County Parks and Recreation maintenance employee, and mentioned the problem with the "S" hook to him. Norton told Nevils that he would look at the hook. Norton did examine the swing set and noticed that the ends of the "S" hook were spread out to some degree. In his opinion, however, the ends were not so far apart that it would render the "S" hook defective, nor did he consider the hook dangerous or about to fail. Norton considered using bolt cutters, which also function as large pliers, to press the ends of the hook closer together. Realizing, however, that there was a chance this would cause the hook to break, Norton did not use the bolt cutters for this purpose.

Around 6:00 p.m. on July 19, 1999, 14-year-old Daniel Cobb was using the swing previously inspected by Norton when the "S" hook attaching the swing chain to the seat broke, causing him to fall on his back. Cobb claims injuries as a result of this fall and filed suit after turning 18 years old.

A report was made by the Cobb County police of the accident and Norton was interviewed. He confirmed that he had inspected the swing but had made the decision not to repair it or take it out of service. On July 20, 1999, J. Osborne of Cobb County Risk Management inspected the swing set and filed his inspection report, which stated that "I went to Hurt Road Park to inspect children's swing at play ground, the swing had broken while a child was swinging. I removed all chains and bolts to be replaced with new ones. The chains and components had worn considerabl[y] and are not safe."

1. In its first enumeration of error, Cobb County argues that the trial court erred in concluding that, although Cobb County was entitled to sovereign immunity, the 1965 passage of the RPA waived that immunity.

As recognized by the trial court, "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). Further, "[t]he General

Assembly may waive the immunity of counties, municipalities, and school districts by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX.

As held by the Supreme Court in *Gilbert v. Richardson,*

> [t]he common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions. Prince's 1837 Digest, p. 570; *Crowder v. Dept. of State Parks,* 228 Ga. 436, 439 (185 SE2d 908) (1971). The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which liability insurance protection was provided. Ga. Const. of 1983, Art. I, Sec. II, Par. IX. In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity "to the state and all of its departments and agencies," and this immunity is to prevail except as specifically provided therein. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

(Footnotes omitted.) *Gilbert v. Richardson,* 264 Ga. 744, 745-746 (1) (452 SE2d 476) (1994).

Counties are included in the extension of sovereign immunity to the "state and all of its departments and agencies." *Gilbert,* supra at 747 (2).

The purpose of the RPA is to encourage both public and private landowners to make their property available to the public for recreational purposes by limiting the owners' liability. OCGA § 51-3-20; see *Stone Mountain Mem. Assn. v. Herrington,* 225 Ga. 746, 748 (2) (171 SE2d 521) (1969); *Maleare v. Peachtree City Church of Christ,* 213 Ga. App. 593, 594 (1) (445 SE2d 321) (1994). In order to achieve this purpose, the

> Act specifies that "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes" may not be held liable for personal injuries resulting from unsafe or defective conditions existing on the premises, unless such injuries resulted from "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." OCGA §§ 51-3-23; 51-3-25 (1). See also OCGA § 51-3-22.

(Citation and punctuation omitted.) *Quick v. Stone Mountain Mem. Assn.,* 204 Ga. App. 598 (420 SE2d 36) (1992).

The trial court, finding no explicit language in the RPA which waived sovereign and official immunity of the county and its employees, relied upon *City of Atlanta v. Barnes*, 276 Ga. 449, 451 (3), n. 1 (578 SE2d 110) (2003), to imply a waiver. That case, however, involved a statute expressly providing that a taxpayer whose claim for refund is denied by the county or municipality or not ruled upon within one year of filing the claim "shall have the right to bring an action for a refund in the superior court. . . ." OCGA § 48-5-380 (c). Obviously, this is an express waiver of immunity "by law." *City of Atlanta*, supra at 452. Further, the language in Note 1 relied upon by the trial court is dicta.

By contrast, the RPA, by its terms, limits liability of entities, private or public, which allow their property to be used without charge for recreational purposes. OCGA § 51-3-20; see, e.g., *Maleare*, supra at 594 (1); *Welch v. Douglas County*, 199 Ga. App. 269 (1) (404 SE2d 450) (1991).

To the extent that the trial court's analysis implies a waiver of sovereign immunity by analyzing the RPA, it was in error. "Implied waivers of governmental immunity should not be favored. [Cit.]" *City of Atlanta v. Gilmere*, 252 Ga. 406, 409 (314 SE2d 204) (1984). See also *Eibel v. Forrester*, 194 Ga. 439, 442 (22 SE2d 96) (1942); *Hughes v. Ga. Dept. of Corrections*, 267 Ga. App. 440, 442 (1) (600 SE2d 383) (2004); *Meadows Motors v. Dept. of Administrative Svcs.*, 141 Ga. App. 224, 226 (1) (233 SE2d 14) (1977).

Therefore, the trial court erred in finding that the RPA waived the sovereign immunity of Cobb County, and Cobb County was entitled to summary judgment on this ground.

2. In the second enumeration of error, it is argued that the trial court, having concluded that Norton was exercising discretion in examining the "S" hook, that he did not act with "actual malice" or "actual intent to cause injury," and that he was entitled to official immunity, erred in then finding that the RPA waived this immunity.

The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees sued in their personal capacity. *Gilbert*, supra at 750. Official or qualified immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995).

> [A] public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence

of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). Although official immunity does not apply to purely ministerial duties, public officials are immune from individual liability for discretionary acts undertaken in the course of their duties and performed without wilfulness, malice, or corruption. *Schmidt v. Adams*, 211 Ga. App. 156 (438 SE2d 659) (1993). Whether a duty is ministerial or discretionary turns on the character of the specific act itself. Id. at 157. Unlike a ministerial act, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and footnote omitted.) *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (581 SE2d 272) (2003).

Norton was entitled to official immunity, which cannot be waived. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Gilbert*, supra at 753. Therefore, Norton was also entitled to summary judgment on this ground.

3. Finally, Cobb County and Norton argue that, even assuming a partial waiver of sovereign and official immunity through enactment of the RPA, they were also entitled to summary judgment under that statute. We agree.

There is an exception to this immunity. OCGA § 51-3-25 (1) specifies that an owner is not relieved of liability "for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. . . ." *Welch*, supra at 270 (1).

There is no allegation of malice on Norton's part. The issue of wilfulness is resolved by a four-part test.

"(A) wilful failure to guard or warn would require [(1)] actual knowledge of the owner that its property is being used for recreational purposes; [(2)] that a condition exists involving an unreasonable risk of death or serious bodily harm; [(3)] that the condition is not apparent to those using the property; and [(4)] that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect."

*Ga. Marble Co. v. Warren*, 183 Ga. App. 866, 867 (1) (360 SE2d 286) (1987). This "knowledge" refers to the three previously listed facts of which the owner must have actual knowledge in order to be liable for "choos[ing] not to guard or warn. . . ."

Here, the plaintiff cannot satisfy the third prong of this test. Donna Nevils' affidavit states that "I am relatively sure that the 'S' hook I complained about was located at the top of the swing chain where the swing chain attached to the overhead cross member. When I saw the 'S' hook in question, its appearance did not suggest it would break in two, but rather it might come loose from the chain." Therefore, the defect complained of by Nevils was apparent to those using the property. See *Lee v. Dept. of Natural Resources*, 263 Ga. App. 491, 494 (3) (588 SE2d 260) (2003); *Quick*, supra at 600.

The "S" hook which broke was, in fact, the one at the bottom of the chain which attached the swing to the chain. Again, if Nevils were mistaken about the location of the "S" hook, the defect was still apparent to those using the property. To the extent that plaintiff relies on the observations of risk manager Osborne that the chains and components were "worn considerabl[y]," this too would have been obvious to anyone using the equipment. *Maleare*, supra at 596 (2) (child aware swing set was old and in need of repairs); *Edmondson v. Brooks County Bd. of Ed.*, 205 Ga. App. 662, 663 (423 SE2d 413) (1992) (defective condition of merry-go-round known and appreciated by injured child's father).

Therefore, Cobb County was also entitled to summary judgment on this ground.

*Judgment reversed. Bernes, J., concurs. Barnes, C. J., concurs in Division 1 and in the judgment.*

DECIDED MARCH 19, 2007 — 

*Stephen D. Morrison, Jr., Deborah L. Dance*, for appellants. *Weinstock & Scavo, Jan P. Cohen*, for appellee.