**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1074. ENLOW v. ENLOW.

COOMER, Judge.

M. E., a minor, by and through Deanna Enlow, her parent and guardian, ("Appellant") appeals the trial court's denial of her motion for summary judgment on her claim for fraudulent transfer under the Uniform Voidable Transactions Act ("UVTA") against Glen Enlow ("Grandfather"). On appeal, Appellant contends that the trial court erred in finding that the UVTA can never be used to set aside the terms of a previously entered divorce decree, and, more specifically, that no "transfer" took place as defined by the UVTA. Appellant also contends that the trial court erred in finding that she failed to satisfy the "reasonably equivalent value" and intent elements of her UVTA claim. For the reasons stated below, we vacate and remand.

This Court reviews de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *Norton v. Cobb*, 284 Ga. App. 303, 303-304 (643 SE2d 803) (2007). "Summary judgment is proper when there is no genuine issue of material fact . . . and the movant is entitled to judgment as a matter of law." *Id*. at 303 (citations omitted); see OCGA § 9-11-56 (c).

Viewed in this light, the record shows that in November 2015, Grandfather molested his six-year-old granddaughter, M. E.[1] After he learned Grandfather had molested M. E., her father, Michael Enlow ("Father"), threatened to sue the Enlows. On June 4, 2016, Marilyn Enlow ("Grandmother") wrote an email to Father acknowledging his threat of suit.

Prior to June 16, 2016, Grandfather and Grandmother held five parcels of real property in a trust, The Trust of Glen A. & Marilyn R. Enlow ("Trust I"). On June 16, 2016, Grandfather and Grandmother, as trustees, executed quitclaim deeds transferring these five parcels of real property from Trust I to Grandmother as trustee of a trust in Grandmother's name, The Marilyn R. Enlow Revocable Trust ("Trust II"). Grandmother and her daughter were named as beneficiaries of Trust II. The

---

[1] Grandfather eventually pleaded guilty to criminal charges and is incarcerated.

quitclaim deeds transferring the five parcels of real estate to Trust II were filed on August 8, 2016.

Grandfather and Grandmother signed a divorce settlement agreement dated August 18, 2016. In the settlement agreement, Grandfather agreed that all five parcels of real property were to be awarded to Grandmother. After each paragraph awarding Grandmother one of the parcels, the following language was included:

> NOTE: at the time of this signing, [Grandfather] has executed a quitclaim deed that was prepared as a part of estate planning that is not a part of this action. In the event that such quitclaim deed has not been properly executed, this provision shall remain in full force and effect.

Grandfather and Grandmother's final judgment and decree of divorce incorporating the settlement agreement was entered on November 18, 2016.

On October 11, 2017, Appellant filed a civil action against Grandfather asserting claims for negligence, assault, battery, false imprisonment, negligent and intentional infliction of emotional distress, fraud and fraudulent conveyance under the UVTA, and attorney fees. Grandfather, who is not represented by counsel, sent a pro se correspondence dated November 16, 2017, that appears to be his answer to the complaint. Appellant then filed a partial motion for summary judgment on her claims for negligence, assault and battery, false imprisonment, negligent and

3

intentional infliction of emotional distress, and fraud and fraudulent conveyance under the UVTA. Grandfather submitted a pro se response letter, maintaining that he did not transfer any assets to protect them from any lawsuit.

The trial court granted summary judgment on all of Appellant's claims except on the UVTA claim. In denying summary judgment on the UVTA claim, the trial court held that the UVTA cannot be used to set aside the terms of a previously entered divorce decree. The trial court stated that it could not conclude that any "transfer" had taken place within the meaning of the UVTA because Grandfather never truly "parted" with any asset because the property at issue was marital property subject to equitable division upon the parties' divorce. The trial court certified its decision for immediate review. Appellant filed a timely application for interlocutory appeal, which we granted. This appeal followed.

1. Appellant contends that the trial court erred in finding that the UVTA can never be used to set aside the terms of a previously entered divorce decree. We agree.

The UVTA makes certain transfers of assets by a debtor voidable as to a creditor. See OCGA § 18-2-70 et seq. An "asset" is defined as

> property of the debtor, but the term does not include:
> (A) Property to the extent that it is encumbered by a valid lien;

(B) Property to the extent it is generally exempt under nonbankruptcy law; or

(C) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

OCGA § 18-2-71 (2). A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease, and creation of a lien or other encumbrance." OCGA § 18-2-71 (16). The language "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset" supports the conclusion that the term "transfer" is defined very broadly under the UVTA. Thus, the plain language of the UVTA supports the conclusion that the equitable division of assets within a divorce decree is a transfer within the UVTA.

The parties have not cited, and we have not found, any Georgia case directly on point. However, courts in a number of other jurisdictions have considered the same issue. While not precedential, the cases from other jurisdictions are informative given the similar statutory language in those states. Furthermore, OCGA § 18-2-83 provides that the UVTA "shall be applied and construed to effectuate its general purpose to

make uniform the law with respect to the subject of this article among states enacting the [UVTA]." Other jurisdictions have applied the UVTA[2] in the context of divorce settlement agreements. See *Canty v. Otto*, 304 Conn. 546, 558 (II) (41 A3d 280) (2012) ("the plain language of the act supports the conclusion that distribution of property in a dissolution decree is a transfer under the act."); *Citizens State Bank Norwood Young America v. Brown*, 849 NW2d 55, 61 (III) (Minn. 2014) ("a transfer made pursuant to an uncontested marital dissolution decree may be set aside as fraudulent under [the Minnesota] UFTA."); *RES-GA Lake Shadow, LLC v. Kennedy*, 227 S3d 522, 527 (Ala. Civ. App. 2017) (interpreting the Alabama Fraudulent Transfer Act and stating "[t]o be clear, we explicitly hold that there is no prohibition on a creditor's ability to seek relief under the AFTA based on an allegation that an agreement to transfer marital assets in a divorce action was made with the intention of hindering, delaying, or defrauding a creditor of a spouse."); *Mejia v. Reed*, 31 Cal. 4th 657, 668-669 (II) (D) (74 P3d 166) (2003) ("[California's] UFTA applies to property transfers under [marriage settlement agreements]," stating that "[i]n view of [the] overall policy of protecting creditors, it is unlikely that the Legislature intended

---

[2] The UVTA was previously known as the Uniform Fraudulent Transfers Act. OCGA § 18-2-70.

6

to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in a [marriage settlement agreement].”); *Estes v. Titus*, 481 Mich. 573, 592 (V) (751 NW2d 493) (2008) (holding that Michigan’s “UFTA applies to the transfer of property in a divorce judgment that incorporates a property settlement agreement.”); *Fadel v. El-Tobgy*, 245 Ore. App. 696, 705 (264 P3d 150) (2011) (concluding that transfers of assets during a divorce can violate Oregon’s UFTA and noting that “[a] couple may legitimately wish to dissolve their marriage, yet still act unlawfully by agreeing to divide their assets in a way that shields those assets from one spouse’s creditors.”); *Kardynalski v. Fisher*, 135 Ill. App. 3d 643, 651 (482 NE2d 117) (1985) (“While judicial approval [of a settlement agreement] may represent a determination that the agreement is fair and equitable as between the parties to the divorce, it does not represent a determination that the agreement perpetrates no fraud upon the creditors of one spouse, particularly where the claims of the creditors are not made known to the court or provided for in the decree.”). The parties have cited, and we have found, no authority to the contrary. Thus, the trial court’s conclusion that the UVTA cannot be used to void a transfer made pursuant to a divorce decree is in conflict with the legislature’s intent as expressed in OCGA § 18-2-83 that the UVTA be applied and construed to effectuate

7

its general purpose to make the law uniform among states enacting the UVTA. The UVTA may be used to set aside a voidable transfer contained in a previously entered divorce decree.

2. Given our holding in Division 1, we vacate the trial court's order and remand the case to the trial court to consider whether summary judgment is appropriate under the analysis required by the UVTA, including whether the property transferred from Trust I to Trust II is an "asset" as defined in OCGA § 18-2-71 (2). The limited record, which does not include the Trust I documents, leaves us unable to make this determination on appeal.

*Judgment vacated and case remanded with direction. Doyle, P. J., and Markle, J., concur.*