**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 24, 2020**

# In the Court of Appeals of Georgia

A20A0085. FIVE STAR ATHLETE MANAGEMENT, INC. et al.
v. DAVIS.

COOMER, Judge.

This appeal arises out of a dispute over services rendered under an alleged oral contract. Five Star Athlete Management, Inc. f/k/a France Allpro Athlete Management and Todd France ("France") (collectively, "Five Star") appeal the trial court's partial denial of their motion for summary judgment in a lawsuit filed against them by Luther Davis. Five Star contends the trial court erred in denying summary judgment in their favor on Davis' quantum meruit claim, in determining that the alleged oral agreement was not void and unenforceable on the ground of illegality, and in denying summary judgment as to Davis' Georgia civil Racketeer Influenced and Corrupt Organization (RICO) Act claims. Because we find the alleged oral

contract was illegal and thus unenforceable, and because the trial court's construction of the term "personal property" under Georgia's civil RICO Act was erroneous, we agree and reverse.

This Court reviews de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *Norton v. Cobb*, 284 Ga. App. 303, 303-304 (643 SE2d 803) (2007). "Summary judgment is proper when there is no genuine issue of material fact . . . and the movant is entitled to judgment as a matter of law." Id. at 303; see OCGA § 9-11-56 (c).

So viewed, the record shows that France is an NFL player agent. Davis contacted France in December 2011 and represented that he was managing the NFL agent selection process for Fletcher Cox, a football player from Mississippi State University who expected to be drafted into the NFL. Davis offered to steer Cox into signing with Five Star and told France that Davis would serve as Cox's manager after Cox was drafted into the NFL. The specifics are disputed, but Davis contends that France orally agreed to pay Davis one percent of the proceeds derived from Cox's NFL contracts, whereas France contends that they only had preliminary discussions about how Davis would be compensated if: (1) Davis were to serve as Cox's manager

2

subsequent to Cox's entry into the NFL; and (2) Cox were to agree to the arrangement.

In January 2012, Cox entered into an agency contract with Five Star. Davis alleges that he provided services to France which helped France secure Cox as a client. In April 2012, Cox was drafted into the NFL by the Philadelphia Eagles. Davis never served as Cox's manager and never had an agreement with Cox about payment for any services. Five Star never paid Davis for any alleged recruiting services. Cox later signed his second NFL contract worth $103,000,000. Shortly thereafter, Davis filed a lawsuit against Five Star alleging (1) fraudulent inducement; (2) breach of contract; and (3) quantum meruit. Davis amended his complaint adding a claim under the Georgia civil RICO Act.

Five Star filed a motion for summary judgment as to all claims. In support of their motion for summary judgment, Five Star introduced the deposition testimony of Cox, France, and Davis. With respect to Davis' quantum meruit claim, Five Star argued that Davis cannot recover as the alleged oral contract was void and unenforceable and entirely illegal because Davis was not permitted to induce or solicit Cox to enter into an agency contract under Mississippi law. Five Star argued that the civil RICO claim failed because it was based on the alleged theft of Davis'

3

recruiting services, which do not constitute personal property under the Georgia RICO Act. Five Star also argued that Davis failed to establish the predicate acts necessary to form the basis of a RICO claim.

The trial court held a hearing on Five Star's motion for summary judgment, and entered an order granting Five Star summary judgment as to the breach of contract and fraudulent inducement claims, but denied summary judgment as to the quantum meruit and RICO claims. Five Star obtained a certificate of immediate review and this Court granted its application for interlocutory appeal. This appeal followed.

1. Five Star first argues that the trial court erred in denying summary judgment on the quantum meruit claim because the alleged oral agreement is void and unenforceable as violating Mississippi law.[1] We agree.

> In order to recover under a quantum meruit theory, [Davis] must show (1) his performance as agent of services valuable to [Five Star]; (2) either at the request of [Five Star] or knowingly accepted by [Five Star]; (3) [Five Star's] receipt of which without compensating [Davis] would be unjust; (4) [and Davis'] expectation of compensation at the time of the rendition of the services."

---

[1] Although Five Star identifies three separate errors, because we agree with Five Star that its first and third enumeration are "inextricably intertwined" we will address them both here.

4

*Artrac Corp. v. Austin Kelley Advertising, Inc.*, 197 Ga. App. 772, 777 (5) (399 SE2d 529) (1990) (citation and punctuation omitted). "A quantum meruit recovery may be prohibited where the nature of the contract itself rendered it entirely void for being in contravention of public policy in its totality." *Remediation Svcs., Inc. v. Georgia-Pac. Corp.*, 209 Ga. App. 427, 434 (2) (433 SE2d 631) (1993). "Similarly, where a contract is illegal only in part, recovery is allowed on a quantum meruit basis for the part of the services which was legal." Id.

> In Georgia, a contract to do an illegal thing is void. But a contract does not fall within this principle unless its object or purpose is illegal. The prohibition does not apply where the object of the contract is not illegal or against public policy, but where the illegality is only collateral or remotely connected to the contract.

*Smith v. Saulsbury*, 286 Ga. App. 322, 323-324 (1) (b) (649 SE2d 344) (2007) (citations, punctuation, and emphasis omitted).

Here, Five Star argues that the alleged recruiting services provided by Davis were illegal under the Mississippi Uniform Athlete Agents Act (the "Agent Act"), Miss. Code Ann. § 73-42-1 et seq. Under the Agent Act, an "athlete agent" is "an individual who . . . directly or indirectly, recruits, induces or solicits a student-athlete to enter into an agency contract." Miss. Code Ann. § 73-42-3. Pursuant to the Agent

5

Act, "an individual may not act as an athlete agent . . . before being issued a certificate of registration[.]" Miss. Code Ann. § 73-42-7. Athlete agents are prohibited from initiating contact with a student-athlete unless they are registered under the Agent Act. See Miss. Code Ann. § 73-42-27 (2) (a). A violation of the Agent Act is a felony punishable by a fine up to $10,000, or imprisonment up to 2 years, or both. See Miss. Code Ann. § 73-42-29.

In denying the motion for summary judgment, the trial court relied on *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200, 202 (230 SE2d 351) (1976) where this Court reversed a trial court's ruling that a contract to operate a tavern was void as illegal where one of the parties to a contract was operating the tavern without a license to sell alcoholic beverages. In reversing the trial court, we held that the contract was not void because the purpose of the contract was not for an illegal thing and that it did not require a violation of the ordinance in order for the contract to be performed. See id. at 202-203.

Here, however, the alleged oral agreement between Davis and Five Star was for an illegal thing: for an unlicensed person (Davis) to induce Cox (student-athlete) to enter into an agency contract with France. And, "[w]here a statute provides that persons proposing to engage in a certain business shall procure a license before being

6

authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable." *Bowers v. Howell*, 203 Ga. App. 636, 636-637 (1) (417 SE2d 392) (1992) (citations and punctuation omitted). Although Davis argues that even if this Court concluded that some portions of the agreement were void for illegality, Davis could still be entitled to seek recovery for providing "intelligence regarding Cox's recruiting process and arranging critical meetings (between Five Star and Cox)," this is the type of illegal conduct prohibited by the Agent Act. See Miss. Code Ann. § 73-42-27 ("An athlete agent may not engage in any of the following activities, within this state or otherwise, with the intent to induce a student-athlete to enter into an agency contract . . . (c) [f]urnish anything of value to any individual other than the student-athlete or another registered athlete agent. . . . An athlete agent may not intentionally . . . (a) [i]nitiate contact with a student-athlete unless registered under this chapter[.]").

Georgia courts have long held that where the illegality of a contract is only collateral or remotely connected with the contract, the part of the contract that is based on legal and binding consideration is severable and may nevertheless be

7

enforceable. See *Adams v. Trust Co. Bank*, 206 Ga. App. 554, 555-556 (2) (426 SE2d 36) (1992). However, "[t]he test for determining whether a demand connected with an illegal transaction is capable of enforcement at law is whether plaintiff requires any aid from the illegal transaction to establish his case." Id. 556 (2) (citation omitted). In the present case, the only evidence proffered by Davis to establish his claim is evidence of Davis' illegal recruiting activities. Accordingly, the trial court erred by denying summary judgment on Davis' quantum meruit claim.

2. Five Star next argues that the trial court erred in denying summary judgment in its favor on Davis' civil RICO claims because "services" are not included within the definition of the term "personal property" under the RICO Act. We agree.

> The Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an "interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury," OCGA § 16-14-2 (b), see OCGA § 16-14-5, and civil remedies to compensate those injured by reason of such acts.

*Williams Gen. Corp. v. Stone*, 279 Ga. 428, 428 (614 SE2d 758) (2005). Under Georgia's RICO Act, "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly

8

or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (a). To establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff. See *Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 391-392 (4) (774 SE2d 197) (2015); *Wylie v. Denton*, 323 Ga. App. 161, 165 (1) (746 SE2d 689) (2013).

Five Star contends that because OCGA § 16-14-4 (a) expressly prohibits a person from obtaining a person's "real property" and "personal property" through racketeering activity, the statute does not prohibit obtaining "services" through racketeering activity. Thus, Five Star argues that Davis cannot maintain a civil RICO cause of action based on the deprivation of his recruiting services. In rejecting this argument, the trial court's order relied on the Georgia Criminal Code's broad definition of "property" at OCGA § 16-1-3 (13). That definition provides that "property" "means anything of value, including but not limited to real estate, tangible and intangible personal property, . . . services . . . [.]" OCGA § 16-1-3 (13). Thus, the trial court ruled that because the criminal code includes "services" within its definition of "property," the deprivation of "services" can support a RICO claim.

9

Similarly, Davis cites to *Williams Gen. Corp. v. Stone*, 280 Ga. 631, 631-632 (1) (632 SE2d 376) (2006), where the Georgia Supreme Court addressed whether a corporation is considered a "person" under the RICO Act. The term "person" is not defined under the RICO Act, and the Supreme Court looked to OCGA § 16-1-3 (12) which defined "person," stating that "the General Assembly set forth the desired application of the term in the definition section promulgated for use in the title which includes the Georgia RICO Act[.]" See *Williams*, 280 Ga. at 631 (1).

Conversely, Five Star argues that the trial court erred "by ignoring the textual distinction between the broadly defined 'property' set forth in the criminal code . . . and the more narrow 'personal property' as used in the RICO Act." We agree with Five Star's contention that by using the broad definition of "property" as defined in OCGA § 16-1-3 (13) to define the more narrow term "personal property," the trial court has rendered the term "personal property" mere surplusage. See *Hasty v. Castleberry*, 293 Ga. 727, 731 (1) (749 SE2d 676) (2013) (The fundamental rules of statutory construction require a statute to be construed according to its terms and "to give words their plain and ordinary meaning and to avoid a construction that makes some language mere surplusage." (citation and punctuation omitted)).

10

Under the rules of statutory construction, "we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Principal Lien Services, LLC v. Kimex Boat Rock 1183, LLC*, 349 Ga. App. 511, 514 (1) (826 SE2d 365) (2019) (citation and punctuation omitted). Here, the term "personal property" is not defined in the RICO Act or in the Georgia Criminal Code. However, the term is defined and categorized in the Georgia Public Revenue Code section as follows:

> "Personal property" means all tangible personal property and all intangible personal property, as the terms are defined in this Code section.

> "Tangible personal property" means personal property which may be seen, weighed, measured, felt, or touched or which is in any other manner perceptible to the senses. The term "tangible personal property" shall not include intangible personal property. This paragraph shall not apply to Chapter 8 of this title relating to sales and use taxation.

> "Intangible personal property" means the capital stock of all corporations; money, notes, bonds, accounts, or other credits, secured or unsecured; patent rights, copyrights, franchises, and any other classes and kinds of property defined by law as intangible personal property.

11

See OCGA §§ 48-1-2 (19); 48-1-2 (22); 48-1-2 (13).

Thus, the General Assembly categorized personal property as either "tangible" or "intangible" and defined both terms without reference to or inclusion of "services." While we understand the trial court's inclination to look within the same code section for similar words in sourcing a definition, when courts "consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Massey v. Allstate Ins. Co.*, 341 Ga. App. 462, 464 (1) (a) (800 SE2d 629) (2017) (citation and punctuation omitted). Here, the General Assembly specified that racketeering activities involving the "interest in or control of any enterprise, real property, or personal property of any nature, including money," is unlawful. See OCGA § 16-14-4. In that regard it can be said that if the legislature intended to use the broader definition of "property" as defined in OCGA § 16-1-13, it would be nonsensical to specify real or personal property in the RICO Act. To effectuate the trial court's interpretation, this Court would have to ignore the legislature's explicit use of the terms "real property" or "personal property," and presume the legislature intended the broader definition of property to apply. This we cannot do. Moreover, while the term "services" is specifically included under the definition of "property"

12

as defined in OCGA § 16-1-13, the term is not included in any definition of "personal property," which invites the application of

> the venerable principle of statutory construction expressio unius est exclusio alterius: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, expressum facit cessare tacitum, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned.

*Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995) (citation and emphasis omitted). Because the trial court erred by concluding the term "services" meets the definition of personal property under the RICO Act, an essential element of Davis' claim under the Act, we hold that Five Star was entitled to judgment as a matter of law.[2]

*Judgment reversed. Miller, P. J., and Mercier, J., concur.*

---

[2] In light of the above, we need not address Five Star's argument that Davis has failed to establish a pattern of racketeering activity.